## THE GUTENFELS.

(District Court, S. D. New York. November 9, 1908.)

SHIPPING (§ 118*)—DELAY IN FORWARDING FREIGHT—DAMAGES.

The steamship and the Hansa Line *held* liable for damage suffered by the libellant through a fall in the price of shellac while delivery was delayed, owing to a failure to forward the goods on the vessel to which they were constructively delivered and which issued bills of lading.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 436; Dec. Dig. § 118.*]

(Syllabus by the Judge.)

Alfred W. Varian, for libellant.
Wing, Putnam & Burlingham, for claimant.

ADAMS, District Judge. This action was brought by Marx & Rawolle, a corporation, against the steamship Gutenfels and her owner to recover the damages said to have been caused the libellant through the failure of the steamship to properly deliver in New York a quantity of shellac, shipped at Calcutta, India, on the 7th day of June, 1907, by John Miller & Co., and for which the libellant, after the delivery of the shellac to the steamer in Calcutta, purchased duly indorsed bills of lading on their faith and credit, for the sum of $14,836.39, the freight to New York having been prepaid. The claimant and respondent duly answered the libel, alleging that no part of the merchandise mentioned in the libel was laden on the Gutenfels, but was brought forward in due course by the steamship Lindenfels, another steamer of the said line, which sailed from Calcutta July 3, 1907, and arriving in New York on the 23d of August, 1907, delivered the merchandise to the libellant.

Thereafter a supplemental and amended libel was filed, alleging the shipment by Miller, the purchase of the bills of lading by the libellant, the prepayment of freight, the bringing forward of the merchandise by the Lindenfels, and the receipt and acceptance of the same by the libellant, under agreement that they should be without prejudice to any rights the libellant might have against the vessel or owner. It was further alleged that by reason of the failure to bring forward the shellac by the Gutenfels, the libellant suffered damage in the sum of $783.74, due to the fall in the price and value of the shellac between the dates of arrival of the said steamers. The claimant and respondent, after some admissions and denials, alleged that the Gutenfels arrived in Calcutta on or about May 29, 1907, and sailed therefrom on or about June 16, 1907, with part of the 750 cases and/or bags of shellac, for which space had been engaged, but there was not room for the full quantity of such cases or bags and consequently 100 chests and 88 bags of shellac mentioned in the supplemental libel were necessarily shut out from the steamship, of which notice was duly given by the agents of the steamship in Calcutta to John Miller & Co., who were requested to alter their cover of insurance thereon. It was further averred that the shellac so shut out was thereafter laden on the steam-

ship Lindenfels, which sailed from Calcutta July 3, 1907, for New York, where she arrived on or about August 23, 1907, and there delivered the shellac which had been shut out of the Gutenfels to the libellant, who duly accepted the same; that the Gutenfels arrived in New York ten days before, to wit, on August 12, 1907.

The testimony and stipulations of fact show that when the libellant's goods reached the steamer's pier they were received and placed in a storehouse to await the Gutenfels' readiness to take them. She could not take them and, in that sense, they were necessarily shut out from her and came forward several days later by the Lindenfels.

After the goods were delivered in Calcutta, the agents of the Gutenfels, who were also the agents of the Lindenfels, signed bills of lading acknowledging the receipt of goods on board of the Gutenfels. The bills of lading were signed "pro Graham & Co. agents for the master." The goods were actually received by the Commissioners of Docks in Calcutta and placed in sheds there from which the ship subsequently received them.

It is urged that the said docks were owned by the government and practically the same as the Public Stores in New York. Receipts were obtained from the commissioners who controlled the docks and subsequently the bills of lading were issued upon the receipts. The bills of lading are evidence of the receipt of the goods by the vessel and I think the evidence about the dock commissioners is not sufficient to overcome them. The goods were delivered in ample time to be forwarded by the Gutenfels and it was no fault of the libellant's assignors that they were not taken on board by that steamer. This seems to have been a matter of convenience to the vessel, which chose to bring forward other goods, whereby some damage was suffered by the libelant. It appears that the possession of the dock commissioners was really the possession of the ship, as they were its agents for the receipt of the goods, and when possession was given to them, it was given to the ship. There is no question that there was a lawful contract of affreightment here and that the goods were shipped under it. This can not be regarded as an executory contract but should be considered as one duly executed as far as delivery and possession were concerned.

Even, however, if the technical defence that the goods were not actually on board of the steamer could be sustained, the Hansa Line, which has been properly joined with the vessel (The Monte A. [D. C.] 12 Fed. 331, 336) should respond for the damages. The respondent claims that there can be no recovery in personam because it has not been shown that the goods were delivered to the Hansa Line. The bill of lading seems to be a complete answer to this claim. That the goods actually went into the possession of the line is also shown by the fact that they were brought forward by another of its vessels.

There will be a decree for the libellant, with an order of reference.