**LEON ISRAEL & BROS., Inc., v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.**

Circuit Court of Appeals, Fifth Circuit. February 1, 1928.

Petition for Reconsideration of Decree Denied February 20, 1928. Rehearing Denied February 27, 1928.

No. 5107.

1. Shipping ⬤⟞132(3⅝)—Holder of bills of lading seeking recovery from carrier for delay in shipment had burden to prove ships leaving port had available cargo space.

Holder of bills of lading seeking to recover damages from carrier for delay in delivery of coffee shipment had burden to show that ships leaving port in Brazil for United States had available cargo space.

2. Shipping ⬤⟞132(5½)—Proof of vessel's improper stowage of cargo held not to sustain recovery of damages for delay where carrier was not limited to use of that ship.

Where carrier agreed by bills of lading to transport coffee by its steamer Tuladi "or any other steamer or steamers," claim for damages in libel on account of delay in shipment was not sustained by proof that Tuladi's failure to take entire shipment was due to improper stowage of cargo, since there was no obligation to transport shipment by any particular steamer.

3. Shipping ⬤⟞118—Carrier agreeing to deliver coffee by steamer named "or other steamer" was merely obliged to carry shipment within "reasonable time."

Carrier who agreed to transport coffee from Brazil to New Orleans by its steamer Tuladi "or any other steamer" was, under obligation merely to transport shipment within a reasonable time; determination of what constitutes "reasonable time" being dependent upon facts and circumstances of particular case.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reasonable Time.]

4. Shipping ⬤⟞111—Deposit by carrier with shipper of goods received after issuance of bills of lading made consignor warehouseman.

Redelivery by carrier of goods delivered for shipment on vessel, after issuance of bills of lading, made shipper accepting redelivery warehouseman.

5. Shipping ⬤⟞105—Delivery on board lighters under carrier's control, following custom of port, held to render bills of lading effective.

Delivery of goods on board lighters under carrier's control, according to a custom of the port, *held* to constitute good delivery to carrier, sufficient to render bills of lading binding.

6. Shipping ⬤⟞117—Upon issuing bills of lading, carrier was under duty to see that delivery of goods shipped was made only to holder.

Carrier by water issuing bills of lading was under duty to see to it that delivery of goods was made only to holder, and could not, by returning goods to shipper, escape liability for delay.

**7. Shipping ⬅113—Holder of bills of lading held entitled to damages from carrier for delay, notwithstanding carrier's redelivery of goods to shipper.**

Failure of carrier to ship bags of coffee delivered to it from Brazil to New Orleans within reasonable time *held* to render carrier liable to purchaser of coffee holding bills of lading for damages resulting from delay, notwithstanding shipper to whom carrier had made redelivery was to blame for delay, since carrier was responsible for safe-keeping and return of the coffee subsequently deposited with shipper as warehouseman, and holder was entitled to rely on bills of lading.

**8. Shipping ⬅118—Failure to ship all of coffee delivered carrier on steamer having sufficient space held unreasonable delay, rendering carrier liable for damages.**

Under bills of lading providing for transportation from Brazilian port by steamer Tuladi, "or other steamer or steamers," of coffee shipment to New Orleans, failure of carrier to make shipment on steamer arriving with space enough to take all of coffee remaining constituted failure to ship within reasonable time, rendering carrier liable to holder of bills of lading for damages resulting from delay with reference to coffee subsequently shipped.

**9. Shipping ⬅131—Damages for carrier's delay in delivery held difference between market value of goods when shipment should have been delivered and value on date of actual delivery.**

In libel by holder of bills of lading against carrier for delay in delivering shipment of coffee from Brazilian port to New Orleans, measure of damages for unreasonable delay *held* difference between value of coffee when it should have been delivered and value at date when coffee was actually delivered.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Louis H. Burns, Judge.

Libel by Leon Israel & Bros., Inc., against the United States Shipping Board Emergency Fleet Corporation. From a decree of dismissal (18 F.[2d] 627), libelant appeals. Reversed and remanded.

Edwin T. Merrick, Ralph J. Schwarz, and Morris B. Redmann, all of New Orleans, La., for appellant.

Edouard F. Henriques, Sp. Asst. in Admiralty to U. S. Atty., of New Orleans, La., for appellee.

Before WALKER, BRYAN and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is an appeal in admiralty from a decree dismissing a libel which sought to recover damages for delay in delivery of a shipment of coffee from Victoria, Brazil, to New Orleans.

On May 31, 1920, Gerhardt & Co. delivered to the United States Shipping Board Emergency Fleet Corporation, appellee, at Victoria, 2,000 bags of coffee for transportation to New Orleans; and on the same date appellee issued its bills of lading calling for delivery in New Orleans to a bank which transferred them to appellant, the purchaser. The bills of lading provided for transportation by appellee's steamer Tuladi "or other steamer or steamers," whether belonging to it or not. The bills of lading were issued, as was the custom at Victoria, while the coffee was on lighters under appellee's control, but whether before or after the Tuladi arrived in port is not clear from the evidence. [1] Until about the 1st of July of 1920 appellee had only three steamers that brought coffee to the United States from South American ports. Victoria was one of these, and, being the farthest north, was the last loading port. The Tuladi took only 400 of the 2,000 bags here involved; and appellee redelivered the remaining 1,600 bags to Gerhardt & Co., taking their warehouse receipt therefor. As no other vessel of its line was expected for some time, it engaged space for the bags of coffee left over in the Lloyd Brasiliero steamer Campos, which was the next vessel expected. The Campos arrived at Victoria on the 14th of June, but while entering port struck a rock and was forced to abandon its voyage. On July 5, the steamer Uberaba arrived with space enough to take the balance of appellant's coffee, but actually took only 1,023 bags, which still left unshipped 577 of the bags included in the bills of lading held by appellant. The Uberaba sailed on July 16. Two other ships arrived at Victoria after the departure of the Tuladi and before the arrival of the Uberaba; but they may be left out of consideration, as appellant failed to meet the burden that was upon it to show that either of them had any available cargo space. After the Uberaba sailed, the Glenaffric arrived and could have carried the balance of appellant's coffee, but took only 149 bags. Finally the balance of 428 bags were shipped on the Easterner. The Tuladi arrived in New Orleans on June 23, the Uberaba on August 20, the Glenaffric on August 28, and the Easterner on September 27. In the meantime the market value of coffee at New Orleans had greatly declined, and was less, on the date of each successive arrival just above stated, than it had theretofore been since the issuance of the bills of lading. Gerhardt & Co., without appellee's knowledge, substituted other coffee for appellant's coffee on the Uberaba and on the Glenaffric. [2–9] Appellant contends that the Tuladi's failure to take the entire shipment of 2,000

bags was due to improper stowage of cargo. It may be assumed that a claim for damages on that ground would be sustainable if the bills of lading had been issued on behalf of that steamer. But they were not so issued. On the contrary, the obligation was, in substance, to transport by the Tuladi or by any other steamer. The extent of appellant's obligation, therefore, was to carry within a reasonable time. United States Shipping Board v. Texas Star Flour Mills (C. C. A.) 12 F.(2d) 9. What should be considered a reasonable time depends upon the facts and circumstances of each particular case. Victoria was not a port where many outgoing vessels bound for New Orleans were to be expected. Under all the circumstances we are of opinion that a shipment on the Uberaba would have satisfied the requirement as to time. It is admitted that the last-named steamer could have taken the whole 1,600 bags which the Tuladi did not take. Appellee seeks to shift the blame for its failure to do this to Gerhardt & Co., who, instead of redelivering appellant's coffee, called for by their warehouse receipts, substituted without appellee's knowledge, the coffee of other consignees. Gerhardt & Co. accepted redelivery in their capacity as warehousemen, not from the consignee, but from the carrier; and this was done after the issuance of the bills of lading. Delivery, according to a custom of the port, on board lighters under appellee's control, constituted a good delivery to appellee, and was therefore sufficient to render the bills of lading binding obligations. Bulkley v. Naumkeag Cotton Co., 24 How. 386, 16 L. Ed. 599. Upon issuing its bills of lading, it became appellee's duty to see to it that delivery was made only to the holder thereof. Pollard v. Vinton, 105 U. S. 7, 26 L. Ed. 998. It could not return the goods to the shipper and escape liability for delay, but was responsible for the safe-keeping and return of the coffee subsequently deposited with Gerhardt & Co. as warehousemen. Appellant was entitled to rely on the bills of lading. Appellee is therefore liable for the delay in delivery of the 577 bags of coffee that occurred after the date of arrival in New Orleans of the Uberaba. The measure of damages is the difference between the market value on the date when these 577 bags should have been delivered and the dates when they were in fact delivered. United States Shipping Board v. Florida Grain & Elevator Co. (C. C. A.) 20 F.(2d) 583.

The decree is reversed, and the cause remanded, for further proceedings not inconsistent with this opinion.

On Petition for Reconsideration and Correction of Decree.

PER CURIAM. The petition of the appellee in the above numbered and entitled cause for a reconsideration and correction of the decree therein is denied.