## OLIVIER STRAW GOODS CORPORATION v. OSAKA SHOSEN KAISHA.

### No. 173.

Circuit Court of Appeals, Second Circuit.

March 2, 1931.

See, also, 21 F.(2d) 618.

Hunt, Hill & Betts, of New York City (John W. Crandall, of New York City, of counsel), for appellant.

Bigham, Englar, Jones & Houston, of New York City (Henry M. Longley and Ezra G. Benedict Fox, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The libelant sued the respondent, a carrier, to recover damages for failure of the latter to deliver at New York 18 cases of hemp braid which had been placed in the hands of the respondent at Yokohama for transportation. The goods were in storage when the great earthquake of September 1, 1923, occurred, and were stolen by looters in the ensuing confusion. The libelant was the owner of the merchandise, and is the indorsee of an "on board" bill of lading issued on August 30, 1923. On a former appeal [27 F.(2d) 129] we decided that the holder in due course of such a bill of lading could recover where drafts issued against it had been honored without knowledge that the merchandise had not been placed on board, and we said that the respondent carrier was estopped by its conduct and by the representations in the bill of lading from showing that the hemp braid had not been shipped as the bill of lading indicated but was in fact stolen from the respondent on shore.

Upon the reversal of the former decree dismissing the libel [27 F.(2d) 129], the cause proceeded to trial on an agreed statement of facts which set forth (1) the sound value of the merchandise at the port of destination had it been shipped as agreed; (2) the invoice value plus insurance and freight, in case the eighteenth clause of the bill of lading be applied requiring that "all admitted claims shall be adjusted * * * on the basis of the market value of sound similar goods on the date of the steamer's arrival at the port of discharge, * * * or, at the carrier's option on the basis of the Invoice Value plus freight and insurance"; (3) the value limited by the ninth clause of the bill of lading to a certain sum per package.

The trial judge held that the misrepresentation contained in the bill of lading prevented "respondent from availing itself of the valuation clause as also of any other exceptions inserted for its benefit," and fixed the damages at the sound value of the merchandise at the port of destination, had it been shipped as agreed. From a decree for the libelant awarding damages upon the basis of the sound value of the merchandise at the port of destination, the respondent appeals.

The question before us is whether the estoppel to deny that the merchandise was shipped as recited in the bill of lading is to go so far that we must treat that instrument as binding in respect to provisions inserted therein for the benefit of the shipowner.

The decisions in this country and England which we especially relied on upon the

former appeal proceeded on the theory of estoppel. Thus in Higgins v. Anglo-Algerian S. S. Co. (C. C. A.) 248 F. 386, the carrier had issued a clean bill of lading and had taken security from a shipper who had delivered to the steamer cases of dates stained, discolored, and damaged by rain. We there held that the carrier was estopped by its fraud from proving as against an innocent purchaser of the bill of lading that the goods were not in good condition when received and that it could not under such circumstances insist upon the observance of a provision in the bill of lading requiring notice of claim before removal of the goods. The English decisions have likewise spoken of estoppel as the basis of liability when a misrepresentation in a bill of lading is involved. Martineau v. Royal Mail Steam Packet Co., 17 Com. Cas. 176; Brandt v. Liverpool, Brazil & River Plate S. N. Co., [1924] 1 K. B. 575; Silver v. Ocean S. S. Co., [1930] 1 K. B. 416.

It is certainly difficult to apply the doctrine of estoppel half way; or, in other words, to hold it effective in order to charge the carrier with liability for goods never on board, but ineffective so far as exceptions in the bill of lading which benefit the carrier are concerned. Yet that is exactly what was done in Higgins v. Anglo-Algerian S. S. Co., supra. The same thing was done in Brandt v. Liverpool Brazil & River Plate S. N. Co., supra, where zinc ashes that had been wet were shipped under a clean bill of lading. The Court of Appeal refused to allow the carrier to invoke an exception covering losses due to a prolongation of the voyage, where the delay was caused by the removal of the ashes at an intermediate port owing to their wet condition. In Silver v. Ocean S. S. Co., supra, the carrier issued a clean bill of lading for goods shipped in damaged condition. The Court of Appeal said, per Scrutton, L. J., that the shipowners were "estopped by their statement that the cans were shipped in apparent good order and condition from proving that they were insufficiently packed," and held that they could not invoke an exception in the bill of lading covering liability for insufficient packing. In all these cases, though the carrier was said to be estopped to deny that it had received merchandise in the condition described in the bill of lading, it was not allowed to take advantage of clauses exempting it from liability or limiting its obligations. In the case at bar, to effectuate the valuation clauses through the fiction of estoppel would be to enable the shipowner to profit by its own wrong. But for its failure to do what the bill of lading represented to have been done the shipper would have suffered no loss. Even under the decisions where the theory of estoppel was adopted, the shipowner could not take advantage of the valuation clauses in the bill of lading.

A more logical basis for libelant's claim is that the carrier violated its agreement in failing to place the merchandise on board. The bill of lading recited that the goods were shipped in apparent good order and condition. That statement was a warranty that they were so shipped, and the libelant, as indorsee of the bill of lading, acquired the direct obligation of the carrier and with it the right to sue. Bank of Batavia v. New York, L. E. & W. R. Co., 106 N. Y. 195, 12 N. E. 433, 60 Am. Rep. 440. In Higgins v. Anglo-Algerian S. S. Co., 248 F. 386, at page 387, we said that the holders of a "bill of lading, are in contractual relation with the carrier and entitled to enforce the contract." Accordingly the purchaser of the bill of lading in the present case is in effect the promisee thereunder.

The warranty that the goods were on board was broken by the failure to ship them, and that breach under the authorities deprived the carrier of the right to invoke the clauses limiting liability. In The Sarnia, 278 F. 459, where the cargo had been improperly stowed on deck, we held that the valuation clauses in the bill of lading did not serve to limit damages. We said, at page 461 of 278 F.: "The general rule undoubtedly is that, if the shipowner commits a breach of the contract of affreightment which goes to the essence of the contract, he is not entitled after such breach to invoke the provisions of the contract which are in his favor."

In St. Johns N. F. Shipping Corporation v. S. A. Companhia Geral, 263 U. S. 119, 44 S. Ct. 30, 68 L. Ed. 201, the shipowner by unlawfully stowing cargo on deck had violated its contract and subjected the goods to a greater risk than had been agreed, and thereby had directly caused the loss. The cargo had to be jettisoned during a storm. The bill of lading contained exceptions against perils of the sea and a clause limiting damages to a certain amount per package. The court held, at page 124 of 263 U. S., 44 S. Ct. 30, 31, that the vessel "became liable as for a deviation," could not escape by reason of relieving clauses inserted in the bill of lading for her benefit, and "must account for the value at destination."

880

Certainly a breach like the one here, which arose from a failure to ship the cargo at all, with its consequent loss or destruction on land, was no less fundamental than a deviation in the voyage, or than stowage of cargo on deck contrary to agreement, or than misdelivery of goods. In all such circumstances valuation clauses in the bill of lading have been held inoperative to relieve the shipowner. St. Johns N. F. Shipping Corporation v. S. A. Companhia Geral, etc., 263 U. S. 119, 44 S. Ct. 30, 68 L. Ed. 201; The Cabo Villano (C. C. A.) 18 F.(2d) 220; Niles-Bement-Pond Co. v. Dampkiesaktieselskabet Balto (C. C. A.) 282 F. 235; The Sarnia (C. C. A.) 278 F. 459.

As the shipowner cannot avail itself of the exceptions or limitation clauses of the bill of lading in a case like the present, it is unnecessary to discuss the particular terms of these clauses or to say whether they would have been applicable if the merchandise had in fact been shipped as agreed and thereafter had been lost during the progress of the adventure.

Apart from the general rule that limitation clauses cannot be invoked where a fundamental breach, like a deviation, terminates the contract of carriage, there is the further objection to applying them here, that they do not cover a case where the cargo was not taken aboard and was lost or damaged on land. They manifestly were only intended to cover cargo shipped, and logically could have no relation to goods which were not placed on the vessel and would not have been lost if disposed of as agreed. In other words, the limitation clauses applied only to cases where the damage was due to losses encountered during the performance of the contract contained in the bill of lading and their incidence was conditioned upon the shipment of the cargo.

Whatever reasons may have been given by the courts for imposing liability upon the carrier for failure to deliver the goods described in the bill of lading, the valuation clauses cannot be invoked in circumstances like the present. The ordinary rule, therefore, applies and the damages recoverable are the value of the goods at the destination to which they were to be carried. St. Johns N. F. Shipping Corporation v. S. A. Companhia Geral, 263 U. S. at page 125, 44 S. Ct. 30, 68 L. Ed. 201. Such were the damages allowed by the District Court in the case at bar.

Decree affirmed.