## SWITZERLAND GENERAL INS. CO. OF ZURICH v. NAVIGAZIONE LIBERA TRIESTINA, S. A.
### No. 277.

Circuit Court of Appeals, Second Circuit.

July 26, 1937.

Loomis, Williams & Donahue, of New York City (Homer L. Loomis and Thomas F. Peterson, Jr., both of New York City, of counsel), for appellant.

Bigham, Englar, Jones & Houston, of New York City (F. Herbert Prem, of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal from a final decree in admiralty recovered by the libelant, an insurance company, which had insured 67 cases of cheese for transportation from Naples to New York on respondent's steam-

er Carso under a bill of lading dated September 29, 1926. The shipment was consigned to the order of Bowery & East River National Bank of New York or assigns, notify F. A. Lumis, who was the consignee and the person insured. When the shipment arrived at New York, it was found to be damaged by worms which had eaten or caused to run out a considerable portion of the butter fat. The bill of lading dated September 29, 1926, and issued by the respondent, described the merchandise as "in apparent good order and condition," whereas the mate's receipts given on loading and dated October 1, 1926, bore the notation "all cases stained by contents." The recital in the bill of lading that the goods were "in apparent good order and condition" was false, but the consignee accepted the accompanying drafts and paid for the cheese on that representation. Upon discovery that the shipment was damaged, he made demand upon the Insurance Company to pay his loss, and, on its refusal to pay, brought an action against it in the New York City Court on September 3, 1927, and recovered a judgment for $1,496.67 and interest. The Insurance Company defended the action on the ground that the policy did not cover the loss because the damage to the cheese did not occur on board the vessel but originated on shore long prior to shipment. After an unsuccessful appeal, final judgment was entered on April 6, 1932, and was satisfied May 23, 1932. On June 13, 1932, the Insurance Company in the exercise of its alleged right of subrogation to the claim of the consignee against the carrier filed this libel to recover damages under the bill of lading.

Section 17 of the bill of lading, which deals with the presentation and assertion of claims for damaged cargo, provides that "no suit * * * to recover for any such claims or demand shall be maintained against the carrier unless such action is commenced within twelve months after filing of * * * notice of claim." Section 22 incorporates the Rules of the British Carriage of Goods by Sea Act of 1924, one of which contains the following clause:

"In any event the carrier and the shipper shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered."

The parties agree that the merits of the present suit are in effect determined by the decision of this court in The Carso, 53 F. (2d) 374, 376. We there held that other consignees of cheese which had been shipped on The Carso under clean bills of lading were entitled to recover damages under the bills of lading where at the time of shipment the exterior of the cases showed that the cheese which had been described in those documents as in "apparent good order and condition" was infected with worms and was in a decaying condition.

The sole question left for consideration by the District Court and by us on appeal is whether the libelant is precluded from maintaining the present suit because of the one-year limitation for the assertion of such claims which is contained in the bill of lading.

The court below held that libelant was not precluded for the reason that the wrongful conduct of the respondent in issuing a clean bill of lading when it had notice that the cheese was infested with worms estopped it from invoking any clause of that instrument inuring to its benefit. In reaching this conclusion the trial judge relied on our decision in The Carso, 53 F.(2d) 374. In our opinion, The Carso is not an authority that supports the libelant's position, and we believe that the same thing is true of the other authorities on which its counsel so earnestly relies.

In The Carso we held that the owner of the vessel, which was the respondent in the present case, was estopped to invoke exceptions in bills of lading relieving it from claims for damage from putrefaction of the cheese, where it had been described as shipped in "apparent good order and condition," but where, at the time of shipment, the cases showed on their exterior that it was infested with worms and had begun to decay. We also held that the carrier could not invoke a 48-hour notice clause because the consignee had been lulled into security by the issuance of clean bills of lading and had not become aware before the expiration of 48 hours that the cheese was decaying when laden on the vessel.

In Silver v. Ocean Steamship Co., [1930] 1 K.B. 416, the Court of Appeal held that the carrier could not avail itself of an exception relieving it from damages due to "insufficiency of packing" where the bill of lading was in the hands of a bona fide purchaser for value and recited that the goods were "shipped in apparent good order and condition" but the insufficiency of

962

packing was manifest at the time the cargo was taken on board.

In Higgins v. Anglo-Algerian S. S. Co. (C.C.A.) 248 F. 386, 389, the carrier fraudulently issued the bill of lading which recited that a shipment was in apparent good order and condition when such was not the case. It was held as in The Carso that the carrier was precluded from showing that the merchandise was not in the condition described and that, when sued for damages, it could not avail itself of an exception providing for notice of claim by the owner of the cargo before removal of the goods from the carriers' possession, because "to give the carrier the benefit of this exception would be to enable it to protect itself against the consequences of its own fraud."

In Olivier Straw Goods Corporation v. Osaka Shosen Kaisha (C.C.A.) 47 F.(2d) 878, 74 A.L.R. 1378, the bill of lading recited that merchandise which had never been put on board was shipped in apparent good order and condition. It was in fact in the warehouse at Yokohama at the time of the Japanese earthquake in 1923 and was stolen therefrom by looters in the ensuing confusion. We applied the doctrine of estoppel and allowed the consignee to recover for the loss of the goods, holding that the carrier could not receive the benefit of valuation clauses in the bill of lading which purported to limit its liability. We said that the breach of the contract of carriage was of so fundamental a character as to be the equivalent of a deviation which rendered all the exceptions in the bill of lading a nullity. See The Sarnia (C.C.A.) 278 F. 459, 461, to the same effect.

In Brandt v. Liverpool, Brazil and River Plate Steam Navigation Co., (1924) 1 K.B. 575, a carrier which had described goods in a bill of lading as shipped in apparent good order and condition when they had not been so shipped but had been previously wet by rain was held estopped to show that the goods were in damaged condition at the time of shipment and precluded from taking advantage of an exception in the bill of lading exempting the carrier from liability for delay caused by prolongation of the voyage.. A delay due to reconditioning and reshipment of the goods by another steamer was found necessary because of their damaged condition when received by the carrier. This delay and reshipment were held to be in effect a new voyage which amounted to a deviation and nullified the clause in the bill of lading exempting the carrier from claims for damages due to delay or prolongation of the voyage. The decision turned on the substitution of a different voyage from the one contracted for, which was held to amount to a deviation. The consignee recovered damages for the breach of the contract of carriage and the shipowner, as is general in case of a deviation, was deprived of defenses based on exceptions contained in the bill of lading.

The decisions of Channell, J., in Compania Naviera Vasconzada v. Churchill & Sim, (1906) 1 K.B. 237, and of Scrutton, J., in Martineaus, Ltd., v. Royal Mail Co., (1912) 17 Com.Cas. 176, and of Justice Nelson in Bradstreet v. Heran, Fed.Cas.No. 1,792a did not deal with exceptions in the bills of lading and only held that a carrier taking on board damaged goods with notice of their defective condition was precluded as against an innocent consignee from contradicting recitals in the bills of lading that the merchandise was in good or in apparent good order and condition.

In view of the foregoing authorities, we hold that in the case at bar an estoppel was established so that the insured would be entitled to recover damages for breach of the agreement of carriage except for the one-year limitation hereinafter discussed. Likewise the carrier could take advantage of all exceptions in the bill of lading, the enforcement of which would not be inequitable in view of the misrepresentations therein as to apparent good order.

Long before one year after the delivery of the cheese in New York we think the consignee learned that the cases had showed external signs of decay when shipped. In any event, the libelant has not pleaded or proved that the consignee did not become aware of these signs of decay at a relatively early date and has not excused the delay in bringing suit against the respondent for over five years. Libelant had the burden of establishing concealment on the part of the carrier and diligence on the part of the consignee in order to escape the contract provision that his claim must be sued upon within one year after presenting it. United States v. Oregon Lumber Co., 260 U.S. 290, 299, 43 S.Ct. 100, 102, 67 L.Ed. 261; Wood v. Carpenter, 101 U.S. 135, 140, 25 L.Ed. 807. Accordingly the one-year limitation of the time within which to bring suit prescribed

by the bill of lading and the British Carriage of Goods Act which is incorporated therein applies to the cause of action in the libel with full force and effect. Nothing resembling a deviation has been shown to deprive the carrier of the benefit of the limitation and it did nothing to lull the consignee into false security or to induce him to delay bringing suit for many years. Instead of suing the steamship line for a breach of the contract of carriage, he chose to collect his loss from his underwriter. Now, about five years after discovery that the cheese was decaying at the time when it was shipped and the false bill of lading was issued, the underwriter undertakes to enforce the claim of the insured against the carrier. The libel was filed long after the time had expired within which suit could be brought under the terms of the bill of lading. In exercising its right of subrogation, the Insurance Company proceeds wholly in the right of the insured and its claim is subject to all the defenses which the carrier might assert against the consignee. While it acted with reasonable promptitude after judgment had gone against it in the action by the insured, its rights depend on those of the insured and his cause of action against the carrier has long since been barred. We think neither reason nor authority support libelant's cause of action.

█ It is also argued that because the bill of lading was dated September 29, 1926, and the mate's notes disclosing the defective shipment were dated October 1, the goods were not on board when the bill of lading was delivered reciting that they had been shipped, and under such circumstances, as in Olivier Straw Goods Corporation v. Osaka Shosen Kaisha (C.C.A.) 47 F. (2d) 878, 74 A.L.R. 1378, there was a deviation which nullified all provisions in the bill of lading for the benefit of the carrier. But, even if the delivery of the bill of lading preceded the shipment by two or three days, the cheese was put on board shortly after the delivery of the bill and the consignee suffered no prejudice from the premature delivery, such as occurred in the Olivier Straw Goods Case where the merchandise never was on the vessel at all, but was stolen by land thieves. We cannot regard the conduct of the master in dating or even in delivering the bill of lading before the cheese was placed on board as, under the above circumstances, amounting to a deviation and as depriving the shipowner of the benefit of the limitation provision. Moreover, the stipulated facts do not present the issue as to whether the bill of lading was delivered for merchandise that was not on board, or furnish any proof that it was in fact delivered before the cheese was loaded.

The sum and substance of the matter is that the libelant is seeking to recover damages for breach of a contract of carriage and at the same time is repudiating a provision in the contract limiting the time within which suits may be brought; and it is taking this position, although the representation of the carrier that the cheese was in apparent good order and condition at the time of shipment bears no relation to the limitation provision we are dealing with. We can see no justice in treating the recital of the contract that the cheese was in apparent good order and condition as unrebuttable upon the theory of estoppel and at the same time in depriving the carrier of its contractual right to have the provision complied with as to when suit must be brought.

For the foregoing reasons we hold the one-year limitation clause valid and applicable as a bar to the assertion of the present cause of action.

The decree is reversed, with costs, and the libel dismissed.