**ORTEGA & EMIGH, Inc., v. GRACE LINE, Inc., et al.**

No. 24218.

District Court, N. D. California, S. D.

June 20, 1947.

Derby, Sharp, Quinby & Tweedt, of San Francisco, Cal., Proctors for Libelant.

Frank J. Hennessy, United States Attorney, and William E. Licking, Assistant United States Attorney, both of San Francisco, Cal., Proctors for Respondents.

HARRIS, District Judge.

Libelant, Ortega & Emigh, Inc., the asserted holder for value of an alleged contradictory bill of lading seeks to recover the sum of $6265.35, its acceptance loss from respondents Grace Line, Inc., and the United States of America.

Prior to trial a stipulation was entered into by the parties:

"Ortega & Emigh, Inc., libelant herein, was during April, May and June, 1943, and still is a California corporation engaged in the importation of coffee.

"In April, 1943, libelant contracted with Salvador Herrera & Co. of Guatemala City, Guatemala, for the purchase of 775 bags coffee, at a price of $15.30 per 100 lbs., Spanish weight, on board ship at Guatemalan Pacific Coast ports. Under such contract, Herrera & Co. delivered 273 bags coffee to San Jose de Guatemala on or about May 27, 1943, for shipment to libelant at Los Angeles, California, on the S. S. Karmen, a vessel operated by respondents.

"Said 273 bags coffee, having a value of $6265.35, were placed on a lighter operated by Agencia Maritima Nacional, a Guatemalan corporation, for transportation to the Karmen, which was then lying in the roadstead of the port. While alongside the Karmen on May 27, 1943, the lighter cap-

sized in a sudden squall, and the entire 273 bags coffee were totally lost.

"Thereafter a purported bill of lading (No. 12) dated May ——, 1943, the original of which is attached hereto, was signed by the master of the Karmen and issued or delivered to Herrera & Co. Herrera & Co. then forwarded said bill of lading in the regular course of business, together with commercial and consular invoices, all attached to a sight draft against libelant, which was presented to libelant on June 8th, 1943, by the Anglo California National Bank of San Francisco.

"Libelant accepted and paid the draft ($6265.35) in reliance upon the statement in the bill of lading that the goods were certified to be on board the ship, failing to note that the bill of lading also recited that the entire shipment of 273 bags had been lost overboard 'ex lighter alongside vessel due to storm.'

"Upon acceptance and payment of the draft, the bill of lading was delivered to libelant by the bank.

"The Karmen arrived in Los Angeles on July 1st, 1943."

In addition it appears that libelant on May 29, 1943, received the following cable from Salvador Herrera:

"Coffee part of contracts 56 and 43 lost in San Jose during loading Stop Advise name assurer and what documents necessary for claim."

Response was made by libelant on the same date:

"Coffee telegraph quantities lost each contract."

On May 31, 1943, Herrera responded:

"Yours 29 contract 43 156 bags contract 56 273 bags lost".

It appeared that on May 29, 1943, Salvador Herrera drew a sight draft on libelant in the amount of $43,529.44. This draft was accepted on June 8, 1943 (Resp. Ex. "D").

In facilitating the banking transactions libelant on June 11, 1943, executed its promissory note in said amount in liquidation of the sight draft and received from the American Trust Company under trust receipt, three commercial invoices and three bills of lading dated May 19, 1943. (Resp. Ex. "E")[1]

Appended to the documents may be found a work-sheet setting forth computations in arriving at the sum of $43,529.44. It may be noted that the draft covers an interchange of debits and credits between the shipper, Herrera, and libelant.[2] Note that the 273 bags are referred to therein as "lost."

It appears in the light of the foregoing facts that before honoring the draft through the medium of the promissory note, and the consequent withdrawal of the several bills of lading under trust receipt, that libelant had actual notice and knowl-

---

[1] "Trust Receipt San Francisco, California, June 11, 1943, 3 Commercial Invoices and 3 sets ⅓ Bills of lading dated May 1943, covering shipments of coffee from San Jose de Guatemala as follows:

| 1140/S.H. & Cia | 273 bags | to | Los Angeles Harbor |
|---|---|---|---|
| 132 " | 700 " | | San Francisco |
| 128 " | 1000 " | | Los Angeles Harbor |
| | 1973 " | | |

[2] "Draft of Herrera    $43,529.53    Accepted June 8, 1943

| 273 bags Mujulia 1140—L. A. | @ 15.30 (Lost) | $ 6265.35 |
|---|---|---|
| 700 bags California 132 | @ 14.75 | 15487.41 |
| 1000 bags Pampajilla 128 | @ 15.30 | 22950.00 |

|  | Total | $44702.76 |
|---|---|---|
| Less Amount owed us by Herrera D/N | 138.40 | |
| | 485.10 | |
| | 549.82 | |
| | 1173.32 | 1173.32 |
| | | $43529.44 |

304

edge of the loss upon which recovery is now sought.

Not only was the bill of lading in question specifically referred to in the computations as well as under the trust receipt, but in addition the telegraphic communications, supra, identified the contract numbers in all essential particulars. It is manifest that in the ordinary course of a commercial transaction libelant would not have paid and discharged the amount of $43,529.44 represented by a sight draft, particularly having in mind that the total represented several invoices together with integrated debits and credits, unless the particulars of the items covered by the several bills of lading had been first determined upon. The bill of lading (No. 12) referred to invoice 1140 covering 273 bags "lost" before loading on the "Karmen." Libelant knew that the vessel was carrying coffee and that "on this particular purchase there was no other amount of 273 bags except the amount which forms the basis of this action."[3]

With that factual background the several causes of action contained in the libel may be examined:

■ The first cause is predicated upon contract, alleging in substance delivery and acceptance of shipment for transportation and failure to deliver as agreed. In this, libelant must fail in view of the stipulations. The argument advanced that libelant had *constructive* possession of the cargo is not fortified by the admitted facts nor from any inference to be drawn therefrom. The particular load of coffee was lost before it reached the ship's tackle while it was on board the lighter.[4] Proctor for libelant in this respect stated: "The present stipulation of fact which we have signed practically eliminates our first cause of action because we have admitted what was generally known to be a fact although not legally proved, that the coffee was lost before it reached the vessel."[5]

■ A bill of lading is an instrument of a two-fold character. It is at once a receipt and a contract. In the former character, it is an acknowledgment of the receipt of property on board his vessel by the owner of the vessel. In the latter, it is a contract to carry safely and deliver. The *receipt* of the goods lies at the foundation of the contract to carry and deliver. If actually no goods are received, there can be no contract to carry and deliver. Pollard v. Vinton, 105 U.S. 7, 8, 26 L.Ed. 998; The Capitaine Faure, D.C.; 10 F.2d 950, 958.

Also, it should be added that no claim or contention is made by libelant that the lighter was under control of respondent. In fact, it appears to have been operated by Agencia Maritima Nacional, a Guatemalan corporation. On this branch of the case, libelant relies upon the case of The Tuladi, D.C., 18 F.2d 627, reversed in Leon Israel & Bros. v. United States Shipping Board Emergency Fleet Corp., 5 Cir., 23 F.2d 786, 788. Also reliance is placed upon The Gutenfels, D.C., 166 F. 989. These cases are dissimilar on the facts.

■ Libelants second and third causes of action, are grounded, in the main, upon an alleged breach of warranty, estoppel and deviation. Ordinarily, when a carrier has given a clean bill of lading stating that the cargo is on board when it is not, the courts have held that the carrier is estopped to deny the truth of the assertion against the purchaser of the bill of lading, who has been misled by the representation and has altered his position to his detriment on the faith of the representation. Olivier Straw Goods Corporation v. Osaka Shosen Kaisha, 2 Cir., 27 F.2d 129, 132. When the case again came before the Second Circuit the decision was predicated upon a breach of warranty rather than under the doctrine of estoppel. D.C., 47 F.2d 878, 879, 74 A.L.R. 1378.

The question presented is whether a clean "on board" bill of lading was issued and transmitted to libelant. The agreed statement of facts referred to was amplified as a result of the testimony elicited from libelant at the time of the trial; in addition counsel through explanatory comments provided a factual setting for the agreed statement.

---

[3] Tr. p. 35, line 1.
[4] Tr. p. 7, line 2.

[5] Tr. p. 12, line 13.

■ The evidence shows that a certificate stating that goods were on board the ship was signed by the captain in contemplation of receipt by the "Karmen," in regular course, of the 273 bags of coffee. The coffee was lost before receipt was effected, either actually or constructively. Thereupon, either the captain, someone at his instance, or Herrera & Co., added in bold-faced type under the description of the goods:

"273 Bags Short—Lost Overboard ex Lighter Alongside Vessel Due to Storm."

The obvious purpose of this addition was to render nugatory the bill of lading. No doubt, had the captain known of the situation he would have cancelled or destroyed his certificate; the "people on shore neglected to cancel this particular bill of lading."[6]

Herrera & Co. (not respondents) received this bill of lading and forwarded it to libelant. And then followed the interchange of cablegrams as outlined.[7] Libelant, therefore, knew, or in the exercise of reasonable care should have known, of the specific cargo loss and apparently as a consequence of the foregoing advices, "took it for granted that it was the usual marine loss that had happened to us in many cases."[8]

Notwithstanding all of the surrounding circumstances including the heavy interpolated matter on the face of the bill of lading which would place even the uninitiated on notice, libelant undertook to honor the draft; this with clear and definite knowledge that the particular cargo had been "lost overboard ex lighter due to storm." The answers to the interrogatories reflected that on June 1, 1943, libelant *heard* that the coffee had suffered loss during loading operations[9] and that thereafter on June 8, 1943, the draft was honored for the total purchase price of the shipment.

Libelant places particular reliance upon Evans v. James Webster and Bros. Limited, 1928, 34 Commercial Cases 172, wherein protests by the master and shipper stating that part of the goods were lost before shipment and part were shipped in damaged condition, were communicated to the bill of lading holder before payment. The question involved: Whether the holder was entitled to reply on the statement in the bill of lading that specified quantities of goods were shipped in good order and condition as distinguished from the case at bar wherein there is an internal contradiction in the bill of lading itself. The court in the Evans case had under consideration an independent and an otherwise clean bill of lading. The court concluded that the protest could not be regarded as of greater value than the bill of lading. It was further observed by the court that the cargo stated by the protest to be damaged might not have been cargo belonging to the defendants. Wright, J., said, page 177:

"The protest, therefore, was not necessarily in contradiction of the bill of lading, and I hold without hesitation · that the shipowners are estopped from saying that they are not bound by the statement in the bill of lading as to condition on shipment."

However, the court clearly indicated that there are circumstances under which the estoppel operates equally upon the holder of the bill of lading:

"I do not say there may not be cases where an indorsee for value of a bill of lading may not be estopped from saying that he took the bill according to its face value; there may be cases where he has *independent knowledge* of such a character that he knows quite clearly that the statement in the bill of lading is inaccurate. But I think such cases must be rare." (p. 176) (Emphasis added.)

■ A party who relies on estoppel must show that he has acted on the faith of the statement made and there can be no estoppel where, as here, both parties had information at the material time that the representation concerning the 273 bags of coffee being on board was untrue.

The evidence, brought home to libelant prior to the payment of the draft that the particular lot of coffee had been lost, was clear, convincing and unambiguous. Under all the attendant circumstances, with

---

[6] Tr. p. 29, lines 5, 6, 17, 18, 19.
[7] Tr. p. 29.

[8] Tr. p. 21, lines 1, 8; p. 32, lines 2, 3.
[9] Tr. p. 22–23.

all of the elements of notice present, judgment must be and is hereby ordered for respondents.

Findings may be prepared in accordance with the foregoing.