STANDARD BRANDS, Inc. v. THE
RADJA et al.
No. 25888.

United States District Court,
N. D. California, S. D.
Sept. 4, 1953.

Dorr, Cooper & Hays, San Francisco, Cal., for libelant.

Graham & Morse, San Francisco, Cal., for respondents.

HARRIS, District Judge.

Libelant, purchaser of a large shipment of tea from Africa, brings this action against respondents, owners of the Steamship Radja which carried the shipment from Durban, South Africa, to Tacoma, Washington. Libelant asks damages in the approximate sum of $6,000 to cover the cost of inspecting the merchandise, removing the defective tea and repacking the shipment.

Libelant relies upon two theories as grounds for recovery against respondents: (1) The tea was in good condition upon delivery to respondent Steamship Radja and was discovered to be damaged by salt water mold upon arrival in the United States. Such change in condition constitutes a *prima facie* case of liability against the ship; (2) If the tea was not in good condition when delivered to the ship, respondents' agent knew, or should have known, this to be a fact when he issued the clean bill of lading.

A review of the stipulations and the evidence in the case indicates that the cargo of tea was in good order when brought to the original carrier, the Boschfontein, at the initial African port. During the loading process, part of the shipment of tea apparently received a salt water wetting while it was being removed from lighters to the Boschfontein.

When the tea was shifted at Durban to the Radja, damage to crates was noted but the carrier stated that there was no apparent damage to the contents of the crates. The ten hundred and twenty cases were placed on board with repair to the exterior plywood walls of the specific cases which had suffered most en route from the original African port of Mozambique, Africa. The mate's receipt stated, "Ten cases wet stained," at the time the initial ship was loaded. Ultimately, one hundred and fifty-four cases were affected by salt water mold.

When libelant accepted the tea at Tacoma it notified respondents in general terms of damage which was patent from an inspection of the exterior of the cases. Not until some two months later, when the merchandise was warehoused in San Francisco and the tea chests were carefully examined for inspection did libelant discover the salt water mold. It informed respondents of the condition of the tea and thereafter conducted negotiations which ultimately led to the present suit.

Libelant's witnesses testified that the nature of the mold was such as to establish salt water derivation as opposed to fresh water soaking. The evidence further establishes the fact that the mold was caused by a wetting of some time past as shown by the fact that the crates had been long dried when they were opened for inspection. Such time element is important in foreclosing the possible damaging of the tea during the brief shipment across San Francisco Bay.

■ Libelant contends that it has proved that its tea was in good order when delivered to respondents and in bad order by reason of salt water mold damage when re-

ceived at Tacoma, Washington. Thus libelant asserts a *prima facie* case.

Further, libelant has shown that respondents stowed the tea in a deep tank in the Radja. Such stowage, according to the testimony, exposed the tea to salt water and aggravated the likelihood of mold damage developing because of poor ventilation.

With respect to libelant's second ground for obtaining relief, viz., that respondents' agent perpetrated a fraud on libelant by issuing a clean bill of lading upon receiving the tea, if such tea was not in good order: Libelant alleges that respondents issued a clean bill of lading through its Durban agent in order to receive payment of the shipper's sight draft from the letter of credit upon which a total of almost $60,000 was paid. Libelant notes that the Radja's chief mate listed 680 exceptions to the cases that were received despite the clean bill of lading.

 Respondents reply to the charge of fraud by noting that the exceptions pertain to the physical structure of the outside of the cases in which the tea was packaged. If respondents, through their agent, did know of the defective condition of the tea at the time of its receipt—assuming that the tea was indeed defective at such time—then they misrepresented the condition when they issued the clean bill of lading and they would now be estopped to prove the tea was actually delivered in bad condition. Ortega & Emigh v. Grace Line, D.C., 72 F.Supp. 302.

. Libelants ask damages in the amount of $6,022.02, such being the sum expended for restoration of the tea to commercial condition. Libelant asserts that in the absence of the complete inspection and reconditioning of the entire shipment the Pure Food and Drugs Administration would have seized the shipment as being unfit for human consumption. While the actual value of the damaged tea was small in comparison to the total cost of the restoration bill, libelant may not be limited to such item of recovery. If the inspection and reconditioning were necessary, the full reconditioning expense is an allowable item of damage. The Jeanie, 9 Cir., 236 F. 463.

Respondents contend that the record is barren of establishing, by direct evidence, the fact of wetting on the Radja. The short answer to this might be that respondents are liable even if the wetting occurred on the Boschfontein, in view of the fact that they issued a clean bill of lading.

According to the findings of the surveyors the mold was in fact caused by salt water. Moreover, the dryness of the salted area and the mold itself demonstrated that the wetting had occurred many weeks —if not months—prior to the time that the cases were opened in San Francisco. The evidence points to the damage having occurred during the original carriage by lighter to the Boschfontein at Mozambique, or if not at this moment, during the long voyage in the deep tank of the Radja from Durban to Tacoma.

Accordingly, judgment may be entered in favor of libelant for the amount prayed, upon presentation of findings of fact and conclusions of law.