EMPRESA CENTRAL MERCANTIL DE REPRESENTACOES, LTDA., Libellant-Appellee,

v.

REPUBLIC OF THE UNITED STATES OF BRAZIL, doing business under the name and style of Lloyd Brasileiro, Respondent-Appellant.

No. 354, Docket 24946.

United States Court of Appeals Second Circuit.

Argued May 7, 1958.

Decided July 17, 1958.

748

Purrington & McConnell, New York City (Frank J. McConnell, James D. Brown, New York City, of counsel), for appellant.

Bigham, Englar, Jones & Houston, New York City (F. Herbert Prem, New York City, of counsel), for appellee.

Before WATERMAN and MOORE, Circuit Judges, and GALSTON, District Judge.

WATERMAN, Circuit Judge.

On October 8, 1951 the Lloyd Brasileiro, an ocean carrier owned by the Republic of Brazil, received at its dock in New York twenty-two skids of silicon steel sheets for shipment to the consignee, Empresa Central Mercantil de Representacoes, Ltda., a Brazilian corporation, in Rio de Janeiro. Lloyd acknowledged receipt of these skids by issuing two dock receipts stating "Wrappers torn sheets badly rusted" and "Outside containers badly rusted." Despite its knowledge that the steel sheets were damaged, Lloyd, through the connivance of the shipper, Ameximpo, Inc., issued a clean bill of lading to Empresa's forwarding agent, stating that the steel sheets had been received in "apparent good order and condition." It is conceded that the issuance of the clean bill of lading was a wrongful act and a fraud upon Empresa, because Empresa had agreed with the shipper to pay, and did pay, for a clean bill of lading.

During November 1951 the steel sheets were carried on board the S.S. Loide Guatemala, one of Lloyd's vessels, from New York to Rio de Janeiro, arriving there on December 2. The twenty-two skids were discharged to the Customs Heavy Material Deposit sometime from December 6 to December 12, at which time the Port Authority certified that they were "damaged." Empresa's customs house broker reported to Empresa that the steel sheets were rusted. About December 15 the underwriter sent a chemist, Baretto, to examine the steel sheets. His analysis revealed that the rusting was due to contact with fresh water. The underwriter then sent an experienced cargo surveyor, Ramos, to inspect the shipment. Ramos' examination disclosed that fourteen skids were "in very bad condition," the sheets being extensively dented and pitted with rust. The remaining eight skids were also badly rusted, but in much better shape than the fourteen. After making inquiries of steel merchants in Rio de Janeiro with respect to the market value

of sound steel sheets and of the damaged sheets, Ramos prepared a report concluding that the market value of undamaged steel sheets was 15,00 cruzeiros per kilogram, and that the market value of the damaged sheets was 6,20 cruzeiros per kilogram for the fourteen skid lot and 13,20 cruzeiros per kilogram for the eight skid lot.

Empresa then brought this admiralty proceeding to recover for rust damage to the steel sheets. An interlocutory decree in favor of Empresa was entered by the district court after Lloyd admitted that the steel sheets were damaged when received by it, and the matter was referred to a commissioner for ascertainment of the damages. Thereafter the commissioner concluded that Empresa had not proved the extent of its damages and was not entitled to a recovery. The district court sustained Empresa's exceptions to the commissioner's report and directed the commissioner to file an amended report fixing the damages. 147 F.Supp. 778. Ultimately the damages were fixed at $11,944.44, in accordance with Ramos' report, and the district court rendered a final decree in favor of Empresa for that amount plus interest and costs, being a total of $16,728.85. Lloyd appealed from this decree.

Since Lloyd concedes its liability to Empresa, the only issue raised by this appeal is whether damages were properly proven. Lloyd contends (1) that the market value of undamaged silicon steel sheets in Rio de Janeiro in December, 1951 was not established by credible and competent evidence; (2) that proof of the market value of the damaged steel sheets was similarly deficient; and (3) that Empresa is liable for aggravation of damages occurring after discharge of the shipment at Rio de Janeiro. We think that these contentions are without merit.

The market value at Rio de Janeiro in December, 1951 of steel sheets in sound condition was established by the opinion evidence of Ramos. He canvassed seven Rio de Janeiro steel merchants engaged in the buying and selling of steel sheets and testified that the market value was 15,00 cruzeiros per kilogram. In addition, the replacement value of the steel sheets was shown by the invoice cost plus ocean freight and insurance premium. Cf. Waterman S. S. Corp. v. United States S. R. & M. Co., 5 Cir., 1946, 155 F. 2d 687, 694.

The market value of the steel sheets in their damaged condition was established by the opinion evidence of Ramos. He examined the physical damage to the steel sheets, gave his estimate of the depreciation in their value, obtained bids from local steel merchants for the fourteen skids which were most badly damaged, and accepted the highest bid as representing their market value. It must be remembered that physical damage to the steel sheets at the time of their receipt was conceded by Lloyd, and that its wrongful act in issuing a clean bill of lading at the request of the shipper was a fraud upon Empresa. See Olivier Straw Goods Corp. v. Osaka Shosen Kaisha, 2 Cir., 1931, 47 F.2d 878, 74 A.L.R. 1378; Higgins v. Anglo-Algerian S. S. Co., Ltd., 2 Cir., 1918, 248 F. 386. Moreover, Lloyd, although requested to do so, refrained from participating in the survey. Under the circumstances, we do not think it can complain because Empresa did not adduce the highest character of proof. Cf. The Rosalia, 2 Cir., 1920, 264 F. 285, 290.

The steel sheets were discharged from the S.S. Loide Guatemala on or before December 12, 1951. They remained at the Customs Heavy Materials Deposit from the time of discharge until January 15, 1952 when they were moved to Empresa's warehouse. Lloyd argues that its responsibilities ended when the shipment was discharged, that the steel sheets suffered further damage while stored in the open at the Customs Heavy Materials Deposit, and that Empresa did nothing to prevent further damage. However, the record contains no proof of the existence or the extent of further damage during this period, and we think that in view of the admitted fraud it perpetrated on Empresa, Lloyd had the burden of proving any aggravation of damages.

Cf. Armco International Corp. v. Rederi A/B Disa, 2 Cir., 1945, 151 F.2d 5. Since it failed to show any additional damages after discharge, Lloyd is liable for the entire damages proven.

Affirmed.