NISSHO–IWAI CO., LTD., Plaintiff,

v.

M/T STOLT LION, her engines, boilers, etc.,

v.

ANGLOMAR SUPERTANKERS, LIMITED, Defendants-Appellees,

and

Parcel Tankers, Inc., Defendant-Appellant.

No. 270, Docket 79–7381.

United States Court of Appeals, Second Circuit.

Argued Nov. 8, 1979.

Decided March 3, 1980.

As Amended on Denial of Rehearing April 7, 1980.

Chester D. Hooper, New York City (Keith L. Flicker, M. E. DeOrchis, Haight, Gardner, Poor & Havens, New York City, of counsel), for appellant Parcel Tankers, Inc.

Raymond J. Burke, Jr., New York City (Stephen P. Kyne, Burke & Parsons, New York City, of counsel), for defendants-appellees Anglomar Supertankers, Limited.

Before FEINBERG, MANSFIELD, Circuit Judges, and MISHLER, District Judge.*

MANSFIELD, Circuit Judge:

Parcel Tankers, Inc. (Parcel), time charterer of the vessel M/T Stolt Lion, owned by Anglomar Supertankers, Limited (Anglomar), appeals from a judgment of the District Court for the Southern District of New York, entered by Judge Gerard L. Goettel after a bench trial, holding that Anglomar is not liable to Parcel for damage to a cargo shipped on the vessel to Japan by Nissho-Iwai Co., Ltd. (Nissho) as shipper and consignee. The suit was instituted by Nissho against the ship, its owner, Anglomar, and Parcel. Anglomar cross-claimed against Parcel as a defendant, seeking indemnity from it as charterer. Parcel, which interposed a statute of limitations defense,[1] settled Nissho's claim against it, taking an assignment of Nissho's claim against Anglomar, and cross-claimed against Anglomar, seeking damages as assignee and indemnity as charterer. The district court denied Parcel's claims on the ground that it assumed the burden of proving fault on Anglomar's part, which it had failed to sustain. We reverse.

---

* Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation.

1. Suits for cargo damage under COGSA, *infra*, must be brought within one year from the date when the goods were delivered. 46 U.S.C. § 1303(6). Anglomar raised no statute of limitations defense in its answer to Nissho.

The suit arises out of the contamination of cargo off the coast of Japan in November, 1973. On September 7, 1973, Nissho had entered into a voyage charter with Parcel, under which Parcel agreed to transport approximately 1,500 metric tons of a liquid substance called styrene monomer from Texas City, Texas, to Yokahama and/or Kobe, Japan. The relations between Parcel and Nissho were governed by the U.S. Carriage of Goods by the Sea Act, 46 U.S.C. § 1300, et seq. (COGSA) which had been incorporated into the voyage charter. Parcel arranged for carriage of the cargo by the vessel M/T Stolt Lion, which was owned and manned by Anglomar and had been time chartered by Parcel on June 19, 1970. The bills of lading issued after the loading of the cargo incorporated COGSA.

On October 3, 1973, the cargo was loaded at Texas City, Texas, into the Stolt Lion in good order and on November 13, 1973, a portion of the cargo was discharged in good condition without incident in Kobe, Japan. On November 16, 1973, the Stolt Lion commenced discharging the remaining cargo into coastal tankers at Yokohama, using the same lines and pumps as those that had been used for the discharge in Kobe. At some point during the process of discharging the cargo into the second of two coastal tankers, either during the discharge itself or as the cargo entered the tanks of the second coastal tanker, the styrene became discolored.

On February 10, 1977, Nissho commenced suit against the ship, Anglomar, and Parcel, leading to the cross-claims and proceedings already mentioned. Just prior to trial Parcel negotiated a settlement with Nissho for the sum of $70,000 and received in return an assignment of Nissho's entire cause of action against Anglomar. As assignee, Parcel then sought recovery from Anglomar of plaintiff's claim, which amounted to $141,-147.27, or, in the alternative, reimbursement for the $70,000 settlement sum which Parcel had paid Nissho.

The district court found that the evidence as to the cause of the contamination was inconclusive. The discharge into the first coastal tanker had proceeded without incident or contamination. However, during the discharge of styrene into the second coastal tanker the Stolt Lion developed a list. In addition, pumping problems occurred, which required that pumping be suspended while certain pumps aboard the Stolt Lion were repaired. During the period of suspension it was discovered that some of the styrene just discharged into the second coastal tanker was discolored. Upon resumption of pumping from the Stolt Lion the styrene discharged thereafter appeared to be in good condition.

The discoloration of the styrene therefore occurred during the discharge from the Stolt Lion. Parcel theorized, with the aid of expert testimony, that the listing of the Stolt Lion during discharge caused its pumps to suck up dirty bilge water into the branch lines at a point in the pump room where a defective pump was being repaired and to mix with the styrene. The principal witness in support of this theory was an experienced independent surveyor, Tetsuya Hirayama, hired by the plaintiff Nissho, who was present during the discharge. In rebuttal to this theory Anglomar introduced testimony by the Stolt Lion's Chief Officer to the effect that despite the list, which in his view was normal during discharge, the dirty bilge never reached a high enough level to enter the pipes at the point where the pump was being repaired.

Anglomar theorized that the contamination may have been caused by an unclean condition aboard the second coastal tanker. This was rebutted by testimony by the surveyor that the contamination could not have occurred on board the coastal tanker because the tanker, which had carried styrene exclusively, was extremely clean, based on his inspection of the tanker's tanks, pump room and lines prior to the discharge. Anglomar, in turn, disputed the accuracy of the surveyor's testimony, noting that he could not have conducted an inspection of the coastal tanker in just 20 minutes, as he testified.

The district court, while conceding that the bilge water theory was "not impossible," rejected it, concluding that the cause of the discoloration "would likely remain a mystery." The question as to which party, as between the shipowner, Anglomar, and the charterer of the ship, Parcel, had the burden of proving the cause of the cargo damage thus became determinative. Judge Goettel concluded that, as between a shipowner and a time charterer, the burden of proving fault falls on the time charterer, stating:

"Anglomar contends that, even if COGSA is applied, Parcel was clearly the 'carrier.' 46 U.S.C. § 1301(a), and that therefore the burden of proof would remain on it. This view seems literally correct. More importantly, clause 32 of the charter party provides that the vessel owner shall not be held responsible for contamination of the cargo unless such contamination results from unseaworthiness of the vessel at the time of the loading (discoverable by the exercise of due diligence) or from error or fault on the part of the servants of the owner in the loading, care or discharge of the cargo. The burden of proving such fault on the part of the owner must be borne by the charterer.

". . . Consequently, any liability on the part of the owner must be premised on some error or fault in the discharge of the cargo. The weakness of Parcel's position in this regard, however, is that it assumes that the discoloration existed at the time the cargo was discharged. It has not proved this and, in fact, the evidence was quite clear that no discoloration was noted or any contamination claimed under *after* the styrene had already been discharged into the tanks of the second coastal tanker at Yokahoma." (App. 502a–503a)

■ Parcel contends that the district court erred by failing to distinguish between Parcel's rights and duties as assignee of the shipper's claim and those it assumed as charterer, and that if the court had bifurcated its analysis in the light of these rights and duties attaching to these differing capacities, it would have been forced to conclude that the burden was on Anglomar to prove its freedom from fault.[2]

## DISCUSSION

### The Burden of Proof as Between Parcel as Assignee and Anglomar

We do not disagree with the district court's conclusions that the cause of the cargo damage is likely to remain a mystery and that resolution of the basic controversy turns on the proper placement of the burden of proof. Since Parcel sues in two capacities, we must first decide whether Parcel, in its capacity as assignee of the claims of Nissho, the shipper, or the shipowner, Anglomar, must bear the burden of proving the cause of the damage to the cargo.

■ Nissho's rights against Anglomar are governed by COGSA, which applies to all outbound bills of lading issued by a vessel owner to a shipper such as Nissho, 46 U.S.C. § 1303, and indeed was specifically incorporated into the bills of lading issued by Anglomar, as required by law, § 1303(3). COGSA, enacted by Congress to redress the oppressive edge in bargaining power enjoyed by carriers (defined by the Act to include vessel owners and charterers) over shippers and cargo interests, delineates the responsibilities and liabilities of vessel owners and charterers toward shippers in carry-

---

2. We summarily dismiss Anglomar's first argument that because the notice of appeal was filed solely on behalf of "defendant, Parcel Tankers Inc.," this court lacks jurisdiction of Parcel's cause of action as assignee of plaintiff Nissho against Anglomar. Because the plaintiff Nissho surrendered its cause of action to Parcel, it was perfectly proper for Parcel, as the real party in interest, to assert the cause of action in its own name. Fed.R.Civ.P. 17. See 3A Moore's Federal Practice ¶ 17.09 at 17–82 (2d ed. 1979). Indeed, by virtue of the assignment, Nissho was incapable of noticing its appeal. Moreover, because Anglomar clearly has had notice of the assignment, it is certainly not prejudiced by the notice of appeal.

ing out the former's duties as carriers,[3] § 1302. See Gilmore & Black, The Law of Admiralty, § 3–25 at 145–49 (2d ed. 1975). As assignee of Nissho's cause of action Parcel was entitled to the benefits of COGSA, including its burden of proof rules. Under COGSA, a shipper or consignee may establish a prima facie case against the "carrier," in this case the vessel owner Anglomar, by showing that the cargo was delivered in good condition to the carrier but was in damaged condition when discharged. *Vana Trading Co. v. S. S. "Mette Skow,"* 556 F.2d 100, 104 (2d Cir.), *cert. denied,* 434 U.S. 892, 98 S.Ct. 267, 54 L.Ed.2d 177 (1977); *Travelers Indem. Co. v. S. S. Polarland,* 418 F.Supp. 985, 987 (S.D.N.Y.1976), *affd. mem.,* 562 F.2d 39 (2d Cir. 1977); see Gilmore & Black, *supra,* § 3–43 at 183. Accordingly, in order to make out its prima facie case as assignee of the shipper's rights, Parcel was *not* required to prove that Anglomar was at fault or to explain how the damage might have occurred.

A recent Fifth Circuit case, *Socony Mobil Oil Co. v. Texas Coastal & Intl. Inc.,* 559 F.2d 1008 (5th Cir. 1977), is instructive. There the shipper discovered, two days after the carrier had discharged a cargo of oil into the shipper's off-shore tanks, that the oil was contaminated with water. The Court of Appeals upheld, as not clearly erroneous, the district court's finding that the oil was damaged at discharge. The district court presumed, absent any evidence to the contrary, that an oil company would not maintain its storage tanks with large amounts of water in them. Nor did the court require the cargo owner to prove fault, noting that the owner's attempt to explain how the carrier might have contaminated the oil with water was "gratuitous."

In the case before us the district court, without considering whether Parcel's burden as assignee might be different from its burden as charterer, and relying principally upon certain terms of the charter party, concluded that the burden of proving fault must be on Parcel, the time charterer. To the extent that the district court may have meant that Parcel as assignee must prove fault, the court was clearly in error, since Parcel, absent a finding that the contamination occurred after discharge, made out a prima facie case by showing that the cargo was delivered to Anglomar in good condition (which is undisputed) and that it was found to be contaminated within minutes after discharge, with additional evidence that the Stolt Lion had developed pumping problems during the discharge. See *Socony Mobil Oil Co. v. Texas Coastal & Intl. Inc., supra.*

 Ordinarily this error would mandate judgment in favor of Parcel as assignee. However, in view of the district court's above-quoted comments regarding Parcel's failure to prove discoloration at the precise moment of discharge we remand for a finding on this issue, having in mind the limited obligation required of Parcel as assignee to make out a prima facie case and the fact that "All of the evidence . . . was that the [second coastwise] vessel's tanks were clean and could not have caused contamination."[4]

---

**3.** Since a charterer, for the purposes of COGSA, is considered a "carrier," Nissho also relied on COGSA in its suit against Parcel as well as in its suit against Anglomar, the vessel owner.

**4.** In addition to placing upon Parcel the burden of showing fault in the discharge of the cargo, the district court also held that the failure of Parcel [sic Nissho] to give prompt notice of the contamination was prima facie evidence of proper delivery. (Nissho, in fact, gave notice of the damage 10 months after delivery.) Absent evidence that the cargo was found to be contaminated within a short time after discharge, the failure to give written notice within three days would under COGSA, § 1303(6), create a presumption of good delivery. But here the evidence was clear, and Judge Goettel found, that the discoloration occurred just prior to or shortly after discharge, creating an issue of fact as to proper discharge which can be resolved without resort to, and which effectively rebuts, any time-bar presumption. *Socony Mobil Oil v. Texas Coastal & Intl. Inc., supra* at 1012; Tetley, Marine Cargo Claims, 427–28 (2d ed. 1978). Thus, to the extent the district court required Parcel as assignee to prove fault in the discharge of the cargo in order to overcome the presumption of good delivery, it erred.

### Anglomar's Claim of Indemnification Against Parcel as Charterer

■ Should the district court conclude on remand that Parcel as assignee of plaintiff has made out its prima facie case, the burden would then be on the carrier, the shipowner, Anglomar, to prove that it was free from negligence, § 1304(2)(q). If, as we anticipate on the basis of the evidence adduced at trial, Anglomar could not meet that burden, Parcel as assignee would ordinarily then be entitled to judgment in its favor, closing the matter. However, Parcel also appears in the case in its capacity as charterer. Moreover, both Anglomar and Parcel have filed cross-claims against each other in their capacities as shipowner and charterer, respectively, each seeking indemnity from the other if liability should be imposed. Anglomar's cross-claim makes it necessary to determine, as between Anglomar, the vessel owner, and Parcel, the time charterer, which party is primarily liable for the damages sustained by the cargo interest, i. e., by Parcel as assignee.[5]

■ Although there is no doubt that a right to indemnification between a vessel owner and charterer exists when one is held liable for a fault for which the other is primarily liable, *Iligan Integrated Steel Mills Corp. v. S.S. John Weyerhauser*, 507 F.2d 68 (2d Cir.), cert. denied, 421 U.S. 965, 95 S.Ct. 1954, 44 L.Ed.2d 452 (1974); *Demsey & Associates v. S.S. Sea Star*, 461 F.2d 1009 (2d Cir. 1972); *A/S Brovanor v. Central Gulf Steamship Corp.*, 323 F.Supp. 1029 (S.D.N.Y.1970), the question before us is whether Anglomar as indemnitee or Parcel as time charterer and indemnitor bears the burden of proving either fault or freedom from fault.

■ Parcel as time charterer makes three arguments in support of its contention that Anglomar must bear the burden of proving freedom from negligence in order to be indemnified by Parcel. First, Parcel contends that the Time Charter itself, which governs the relationship between Anglomar and Parcel, places the burden of proving freedom from negligence on Anglomar. Second, Parcel argues that a bailment relationship exists between a vessel owner and a time charterer with the time charterer as bailor and the vessel owner as bailee. Under federal bailment law, according to Parcel, if the time charterer can make out a prima facie case by establishing the loss of his goods, then the burden shifts to the bailee, the vessel owner, to prove that the non-existence of negligence is as probable as its existence.[6] Finally, Parcel contends that by virtue of a "Clause Paramount" contained in the Time Charter, the terms of COGSA are incorporated into the Time Charter and governs the relations between the vessel owner and the time charterer. According to Parcel, once COGSA is brought into the Time Charter, the vessel owner becomes the "carrier" for the purposes of COGSA and the time charterer becomes the cargo interest, imposing upon the vessel owner the burden of a common carrier, once a prima facie case is made out, to come forward with evidence showing that the cargo was not damaged because of fault on its part.[7] Because of our resolu-

---

**5.** Although the Time Charter provides that any and all differences arising out of the Charter shall be put to arbitration, the parties have waived the provision. Thus, the cross-claims for indemnity are properly before us.

**6.** A bailment relationship can exist between a cargo owner as bailor and a vessel owner and/or a charterer as bailee, *Commercial Molasses Corp. v. New York Tank Barge Corp.*, 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89 (1941); *In re Marine Sulphur Queen*, 460 F.2d 89 (2d Cir.), cert. denied, 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 246 (1972); *Nichimen Co. v. M.V. Farland*, 462 F.2d 319, 325 n.1 (2d Cir. 1972), and between a vessel owner and a stevedore, *Stein*

*Hall & Co., Inc. v. S.S. Concordia Viking*, 494 F.2d 287 (2d Cir. 1974). Whether such a relationship exists as a matter of law between a vessel owner and a time charterer poses a more difficult problem for the reason that under a Time Charter the charterer can maintain a significant amount of control over loading, stowage and discharging of the cargo, see infra, which raises an issue of fact.

**7.** COGSA by its terms does not apply to charter parties, 46 U.S.C. § 1305. Congress declined to enact a statute regulating the terms of charter parties because it has generally considered the bargaining power of charterers and vessel owners to be merely equal, unlike the

tion of the first of these arguments, we need not address the second and third.

Under a Time Charter, the charterer engages for a fixed period of time a vessel, which remains manned and navigated by the vessel owner, to carry cargo wherever the charterer instructs. Under a voyage charter the charterer engages the vessel to carry goods only for a single voyage; and under a demise, or bareboat, charter, the charterer takes complete control of the vessel, mans it with his own crew, and is treated by law as its legal owner. See Gilmore & Black, *supra*, § 4–1, at 193.

█ As a general rule, as between a time charterer and a vessel owner, the responsibility for cargo loss falls on the one who agreed to perform the duty involved. See Bauer, Responsibilities of Owner and Charterer to Third Parties—Consequences under Time and Voyage Charters, 49 Tul.L. Rev. 995, 1009 (1975). Although a time charterer is invariably responsible for such business matters as what ports to touch, and what cargo to load and the vessel owners are responsible for navigation and seaworthiness, the Time Charter may specify which party has the duty to load, stow and discharge the cargo. See *Georgia Pacific Corp. v. Motorship Marilyn*, 331 F.Supp. 776 (E.D.Va.1971), and *A/S Brovanor v. Central Gulf Steamship Corp.*, *supra* (where char-

terers had duty to load, stow and discharge). In the absence of any special provision in the Time Charter, however, the duty to load, stow and discharge cargo—and the consequences for failing to do so properly—fall upon the ship and her owner. This principle of admiralty jurisprudence is recognized in both America and England. *Nichimen Company v. M. V. Farland*, 462 F.2d 319, 330 (2d Cir. 1972) (and cases cited therein). We are called upon, then, to determine in the present case whether the responsibility for discharge of cargo has been shifted to the charterer, either by a charter party provision or by action or custom of the parties.

█ We find nothing in the Time Charter which would relieve the vessel owner, Anglomar, of its responsibility for discharge. Although time charters often specify that the charters are to load, stow and discharge the cargo, see, for example, *Nichimen Company v. M. V. Farland, supra* at 331, there is no such provision in the Time Charter before us. Indeed, there is positive evidence that the parties intended to place responsibility for discharge on the vessel owner. Clause 26 of the Time Charter, for example, states that the Master will agree, if requested to by the charterer, to discharge more than one grade simultaneously

---

edge in bargaining power held by vessel owners and charterers over cargo owners. See Gilmore & Black, *supra*, § 4–2 at 197–98. However, charterers and vessel owners may incorporate COGSA into a charter party either expressly or by virtue of a Clause Paramount which explicitly provides for incorporation, *California & Hawaiian S. S. Co. v. Columbia S. S. Co.*, 391 F.Supp. 894 (E.D.La.1972), affd., 510 F.2d 542 (5th Cir. 1975); *Hartford Fire Ins. Co. v. Calmar Steamship Corp.*, 404 F.Supp. 442 (W.D.Wash.1975); *Bungé Corp. v. Republic of U. S. of Brazil*, 353 F.Supp. 64 (E.D.La. 1972); *United States v. Wessel, Duval & Co., Inc.*, 115 F.Supp. 678 (S.D.N.Y.1953), or which have been so construed. *Adamastos Shipping Co., Ltd. v. Anglo-Saxon Petroleum Co., Ltd.* (1959) A.C. 133; *Horn v. CIA de Navegacion Fruca, S.A.*, 404 F.2d 422, 429 (5th Cir.), *cert. denied*, 394 U.S. 943, 89 S.Ct. 1272, 22 L.Ed.2d 477 (1968).

No express incorporation of COGSA appears in the present case. The Clause Paramount reads:

"All bills of Lading issued hereunder shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated therein, and nothing therein or herein contained shall be deemed a surrender by the Owner of any of its rights or immunities or increases of any of its responsibilities or liabilities under said Act. If any term of any Bill of Lading issued hereunder be repugnant to said Act to any extent, such term shall be void to that extent but no further."

Since we dispose of the burden of proof issue on other grounds, it becomes unnecessary to determine whether the clause here incorporates COGSA into the Time Charter. See *Standard Oil Co. v. United States*, 59 F.Supp. 100 (S.D. Cal.1945), affd., 156 F.2d 312 (9th Cir. 1946); cf. *In re Marine Sulphur Queen*, 460 F.2d 89, 103 (1972).

if the Master is satisfied that the vessel's pumps and cargo lines are in a condition to permit such discharge. Clause 61 confirms that the vessel will only discharge to barges if the Master, in his sole discretion, considers such operation safe. Most significantly, the evidence adduced at trial shows that the Anglomar's Chief Officer and Captain made up the plan for discharging the cargo and that Parcel's "supercargo" (a personal representative of the charterer), who was permitted by Clause 62 of the Time Charter to be aboard the Stolt Lion, was not involved in the discharge. In the absence of any charter provision to the contrary and in light of the evidence showing that the crew took control of the discharge, we conclude that the vessel owner, Anglomar, must bear the responsibility for the discharge.

Although Anglomar does not appear to quarrel with that conclusion, it directs us to Clause 32 of the Time Charter which reads:

"DAMAGE TO OR CLAIMS ON CARGO

"32. The owner guarantees that the Vessel is constructed and equipped to carry, without admixture, at least 37 qualities or descriptions of oil; but subject to this, *neither the Owner nor the Vessel shall be responsible for* any admixture if more than one quality of oil is shipped, nor for leakage, *contamination* or deterioration in quality of the cargo *unless* the admixture, leakage, *contamination or deterioration results from (a) unseaworthiness* existing at the time of loading or at the inception of the voyage which was discoverable by the exercise of due diligence, *or (b) error or fault of the servants of the Owner in the* loading, care or *discharge of the cargo.*" (Emphasis supplied.)

Anglomar contends, and the district court agreed, that this clause places the burden on Parcel as time charterer to come forward with some evidence that Anglomar was at fault during the discharge of the styrene monomer if Parcel is to defeat Anglomar's claim for indemnity. We disagree and hold that on the facts of this case Anglomar must bear the burden of proving

freedom of negligence if it is to be indemnified by Parcel.

Clause 32 is not dispositive of the burden issue since it does not assign the burden of proof to either party. Absent a contrary agreement, we think it reasonable to place the burden on the shipowner, at least in this case, as the party in the best position to know what occurred during the discharge. Not only did Anglomar man and operate the vessel at all times, but it bore the responsibility for devising and carrying out the discharge operation. Moreover, placement of the burden on Anglomar does not defeat the purpose or meaning of Clause 32. Absent Clause 32, Anglomar would be liable for all damages arising out of any breach of duty for which it was primarily responsible, regardless of fault. Clause 32 simply limits the shipowner's liability to instances where he cannot show freedom from negligence. Where, as here, the duty of discharge is placed squarely on the vessel owner and the vessel owner is seeking indemnification from the time charterer, it is reasonable to require the owner to come forward with evidence of due diligence if it is to escape the liability.

Accordingly, if the district court finds on remand that Parcel as assignee has made out its prima facie case against the vessel owner Anglomar, the latter cannot be permitted to recover in indemnity from Parcel unless Anglomar sustains its burden of proving that it was free from negligence.

*Parcel's Claim for Indemnification*

In the unlikely event that the district court on remand should find that Parcel as assignee has not made out a prima facie case against Anglomar, Parcel contends that it should nevertheless be indemnified by Anglomar for the sum of $70,000 which Parcel paid Nissho in settlement. Like Anglomar, Parcel relies on the established right to indemnification between a vessel owner and a charterer when one is held liable or pays a reasonable settlement to a third party for a fault for which the other is primarily liable. *Iligan Integrated Steel Mills Corp. v. S. S. John Weyerhauser, su-*

*pra; Demsey & Associates v. S. S. Sea Star, supra.*

■ The first obstacle to Parcel's contention is that it must show that the settlement of $70,000 was reasonable in light of the risk to which it would have been exposed if the suit against it had gone to trial. *Mathiesen v. Panama Canal Co.,* 551 F.2d 954 (5th Cir. 1977); *Damanti v. A. S. Inger,* 314 F.2d 395 (2d Cir.), *cert. denied,* 375 U.S. 834, 84 S.Ct. 46, 11 L.Ed.2d 64 (1963). In its answer to Nissho, Parcel, unlike Anglomar, raised as an affirmative defense the statute of limitations. Because § 1303(6) of COGSA provides that all claims for cargo damage must be brought within one year, Parcel certainly would appear to have had a strong defense against Nissho. Indeed, in both the pretrial order and its briefs before us, Parcel asserts that Nissho's claim against it was time barred. Although we are not prepared to say that Parcel was not potentially liable to Nissho when it entered into the settlement agreement, that possibility appears to have been so remote that the settlement, according to the position taken here by Parcel itself regarding its statute of limitations defense, can only be labelled as improvident.

It must be remembered that we here proceed on the assumption (simply for sake of analysis) that Parcel as assignee has failed to make out a prima facie case, thereby relieving Anglomar of any direct liability for the cargo damage. It would be unconscionable to permit Parcel, by settling with Nissho, to create for Anglomar a liability that would not otherwise exist, at least in the absence of some agreement on Anglomar's part to assume such a liability, which is nowhere to be found.

We reverse and remand for a determination of whether or not Parcel did in fact make out its prima facie case as assignee. If Parcel did make out a prima facie case, then Anglomar must be held liable for the loss and is not entitled to indemnity from Parcel as time charterer unless Anglomar sustains its burden of proving that it was free from negligence. If Parcel did not make out its prima facie case, Parcel's suit as assignee must be dismissed and Parcel may not be indemnified for its "settlement" payment to Nissho.