**AMERICAN INDUSTRIES CORP.,**
**Plaintiff,**

v.

**M.V. MARGARITE, her engines,**
**boilers, etc.,**

v.

**SOUTHERN CROSS STEAMSHIP CO.,**
**INC., and Atlantic Shipping Company,**
**S.C., Defendants.**

**No. 75 Civ. 5292 (MJL).**

United States District Court,
S.D. New York.

Jan. 4, 1983.

Bigham Englar Jones & Houston by James H. Simonson, New York City, for plaintiff.

Cichanowicz & Callan by Donald B. Allen, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

In this cargo damage action, this Court after a trial on liability found:

1.   Plaintiff had proven its fraud claim and was awarded a verdict against the defendant M.V. Margarite and Southern Cross Steamship Co., Inc., *in rem* and *in personam* for 43 coils.

2.   Plaintiff was awarded a verdict for 2 coils defendants conceded were short at Outturn.

3.   Defendants were found not liable for damage to 237 coils.   556 F.Supp. 206.

The matter was set down for a trial on damages.   At the damage hearing counsel for defendants informed the court that the admission of liability for the two coils, short at Outturn, was made in the pre-trial order

by the Charterer not the vessel and owner.[1] The Court finds this to be a correct statement of the record.

Owner interests argue that they are not liable for the shortage under 46 U.S.C. 1301(e) in that under COGSA a vessel's liability under a contract of carriage covers the period from the time when the goods are loaded on to the time when they are discharged from the ship. Counsel further claims that since the master testified that none of the coils were left aboard, and the Custom House broker and plaintiff's truckmen confirmed that the coils were on the pier, the carrier discharged its liability.

Neither of these arguments has merit. Although 46 U.S.C. § 1301(e) defines the term "Carriage of Goods" it does not purport to limit a carrier's responsibility for cargo. The burden of proof is upon the carrier to show that it delivered the coils to the Philadelphia pier in the manner specified in the bill of lading. *Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800, 807 (2d Cir.1971), *David Crystal Inc. v. Cunard Steam Ship Co.,* 339 F.2d 295 (2d Cir.1964), *cert. denied,* 380 U.S. 976, 85 S.Ct. 1339, 14 L.Ed.2d 271 (1975); *Phillip Brothers Metal Corporation v. S.S. Rio Iquazu,* 658 F.2d 30 (2d Cir.1981). The bill of lading herein provided that the cargo was: "to be delivered at the aforesaid Port into consignees or their assigns".

■ The defendants offered no evidence that the two missing coils were off-loaded. The Charterer, now in default, stated at page 11 of the Pre-Trial Order that there is no explanation for the loss. The defendants' reliance upon the truckmen's letter stating that there were two coils still left on the pier does not raise an inference that the coils were off-loaded when one reads the balance of the letter which states: "The Pier will be in touch with us when they are found." Thus read in context, this letter is evidence of nondelivery. Since the carrier is a bailee of cargo until delivered in accordance with the provisions of the bill of lading, Gilmore and Black, *The Law of Admiralty,* (2d Ed.1975) pp. 183–185, and defendants have offered no evidence of such delivery, they are chargeable with the loss of the two coils. *Nissho-Iwai Co., Ltd. v. M/T Stolt Lion,* 617 F.2d 907 (2d Cir.1980).

There is no evidence that the two missing coils were among the 43 subject to this Court's estoppel finding. The defendants' liability is therefore fixed by the COGSA limitation of $500.00 per package.[2] Judgment is therefore entered in favor of the plaintiff on this claim in the sum of $1,000.00 plus interest from the date of discharge at Philadelphia.

*The 43 Coils*

■ After the liability trial, this Court found that defendant M.V. Margarite is liable *in rem* and defendant Southern Cross Steamship Co. Inc., is liable *in personam* for 43 coils they are estopped to deny were delivered to them as represented in the bill of lading.

---

1. Defendants' claim that the charterer is liable for the losses herein under the holding of *Nichimen Company v. M.V. Farland,* 462 F.2d 319 (2d Cir.1972). Although the charter party contains a Clause 8 similar to that in *Nichimen,* such clause does not relieve the owner of liability to third parties but only regulates ultimate liability, *inter-se,* between the Charterer and owner. This Court further notes its finding on Page 24 of the Liability Opinion that under the Clause Paramount in the bill of lading the ship owner assumed liability for any damage or loss due to any breach or non-performance arising out of the contract of carriage. *Nissho-Iwai Co., Ltd. v. M/T Stolt Lion,* 617 F.2d 907 (2d Cir.1980).

2. The contract of carriage governs the relationship between the carrier and consignee after discharge but before delivery. *Leather's Best, supra* at 807.

Section 4(5), 46 U.S.C. § 1304(5), provides: Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. * * *

Defendants argue that *Illigan Steel Mills, Inc. v. S.S. John Weyerhauser,* 507 F.2d 68 (2d Cir.1974) holds that the COGSA package limit applies in all situations except where cargo is improperly stowed on deck. Plaintiff contends, in reliance on pre-COGSA cases,[3] that a fraudulent representation as to the condition of the cargo is a fundamental breach of the contract of carriage such as to constitute a deviation which has the effect of voiding COGSA limitations of liability.

This Court finds that both parties have urged overly broad interpretations of the cited cases. *The Carso, Oliver Straw Goods* and *Switzerland General* stand for the proposition that when a carrier issues a clean bill of lading, with knowledge that such clausing is a misdescription of the apparent condition of the cargo, the carrier is estopped to deny apparent good order and condition (*The Carso*) and the carrier cannot invoke valuation clauses in the contract limiting its liability, (*Oliver Straw Goods*) however the carrier may take advantage of all exceptions "the enforcement of which would not be inequitable in view of the misrepresentations" (*Switzerland General*). The theory of the cited cases is that wilful misrepresentation of condition of cargo, made in a bill of lading gives rise to the equitable remedies of estoppel and recision

of the valuation clauses or the contract remedy—breach of warranty which prevents the shipowner, after such breach, from invoking the provisions of the contract which would defeat recovery. Judge Weinfeld of this Court, in *Jones v. Flying Clipper,* 116 F.Supp. 386, 389 (S.D.N.Y.1953)[4] explained that the doctrine renders unenforceable COGSA's $500.00 limitation of liability. However, it is applicable only to "the carrier's voluntary action in unjustifiably deviating" when the deviation "so changed the essence of the agreement as to effect its abrogation." The Court observed that mere negligence, lack of due diligence, proper handling, stow, care or delivery of cargo has never constituted a deviation.

*Illigan,* involved a claim of unseaworthiness. Cargo interests there argued that since the owner was on notice of the defect before the voyage began, permitting the ship to sail in an unseaworthy condition constituted an unreasonable deviation[5] a concept applicable not only to geographical deviations but also to breaches of the voyage contract by improper stowage.[6] Cargo interests further contended that since breach of the contract by improper stowage constituted a "deviation in law" the limitation of liability in § 4(5) of the COGSA was inapplicable.[7] Judge Friendly, writing for the Second Circuit, rejected this argument,

---

**3.** *The Carso,* 53 F.2d 374 (2d Cir.1931); *Oliver Straw Goods Corporation v. Osaka Shosen Kaisha,* 47 F.2d 878 (2d Cir.1931); *Switzerland General Ins. Co. of Zurich v. Navigazione Libera Triestina, S.A.,* 91 F.2d 960 (2d Cir.1937).

**4.** To uphold the carrier's contention that the limitation of liability is absolute, regardless of a fundamental breach which goes to the very essence of its undertaking, would permit any carrier with recklessness to violate the terms of the bill of lading, knowing that it cannot be called upon to pay more than $500 per package. Such a policy, if upheld, would immunize the carrier against the consequences of its own wilful actions at the expense of an innocent party. In effect, it would result in granting to the carrier exoneration for all damages in excess of $500, even in instances where its conduct in changing the essential nature of the contract caused the damages. There is nothing in the history of the Convention or the Act to warrant such a result. Absent clear Congressional purpose, this Court is not prepared to

interpret the Act so as to permit the carrier to invoke the defense of valuation limitation in cases of unjustifiable deviation. *Jones v. Flying Clipper,* 116 F.Supp. 386, 390–391.

**5.** Counsel argued that the theory of *The Willdomino,* 272 U.S. 718, 47 S.Ct. 261, 71 L.Ed. 491 (1927) in which the Supreme Court held that a ship, forced to make a departure from her course to supplement what was known at the beginning of the voyage to be an inadequate supply of coal, was liable as an insurer for cargo loss because such conduct constituted an unreasonable deviation.

**6.** As to the relevance of pre-COGSA cases *see St. Johns N.F. Shipping Corp. v. S.A. Companhia Geral Commercial,* 263 U.S. 119, 44 S.Ct. 30, 65 L.Ed. 201 (1923).

**7.** *Jones v. The Flying Clipper,* 116 F.Supp. 386 (S.D.N.Y.1953).

not because the Court disapproved of the concept of quasi-deviation as abrogating the contract of carriage thereby voiding the damage limitation of § 4(5) of the COGSA but because the Court of Appeals refused to extend the principal to misconduct in tendering an unworthy ship.

This Court finds that under the law of this Circuit, the doctrine of quasi-deviation is still recognized in appropriate cases and is not limited, as defendants contend, to improper on board stowage. *See Elgie & Co. v. S.S. "S.A. Nederburg"*, 599 F.2d 1177, 1181 (2d Cir.1979). The fraudulent misrepresentation in the bill of lading as to the apparent condition of the 43 coils constitutes a quasi-deviation which renders § 4(5) of the COGSA unenforceable as a limitation upon plaintiff's right to recover full damages sustained.

Plaintiff would be entitled to recover the market value of the 43 coils in good condition at Port Philadelphia less salvage recovery, *Encyclopedia Britannica, Inc. v. S.S. Hong Kong Producer*, 422 F.2d 7, 18 (2d Cir.1969). This case is complicated however by the fact that after delivery of the 43 coils was made to the consignee, the coils were trucked to a warehouse in New Jersey. Some of the trucks were not covered with tarpaulins and at periods of time during transit, it rained. Based upon these facts, defendants contend that a substantial part of the damage which was first surveyed in New Jersey, occurred during the trucking and the burden of proof is upon plaintiff to separate the post-delivery damage from the pre-delivery damage. Plaintiff argued that the burden of proof was upon defendants. *Armco International Corporation v. Rederi A/B Disa*, 151 F.2d 5 (2d Cir.1945) is dispositive of this issue. Judge L. Hand, writing for the Court stated:

> Therefore, the question comes down to whether the consignee failed to take proper care of the plates after the discharge, and whether the ship—which on this issue also has the burden of proof— has shown how much of the damage arose from that failure ... Since there is nothing to charge the consignee until the plates were stacked in the warehouse, and since some part at least of the damage to the plates from holds numbers one and two probably occurred during that time, the ship failed to prove how much of the damage was caused by any negligence chargeable to the consignee. That alone is enough to charge her with all the damage.

> In what we have said, we have assumed that the consignee was in fact negligent after the plates reached the warehouse ...[8]

*Id.* at pp. 8–9.

Even though the consignee delayed more than three months in disposing of the damaged cargo, the *Armco* Court stated:

> [I]t is possible that nothing was done to stop 'oxidization' meanwhile... We hold the ship to be liable for all the damage.

*Id.* at 9.

In the case before this Court, defendants have shown that there was a possibility of wetting in transit to New Jersey.[9] Since the defendants had the burden of proving the failure of the consignee to exercise proper care during trucking, and the amount of damage thereby incurred, the vessel, not the plaintiff, is chargeable with a failure to produce the truck drivers or others capable of offering proof as to the condition of the coils in Philadelphia and in New Jersey. This Court finds that defendants have failed to sustain their burden of proof by a preponderance of the credible evidence that the rainfall during truck transit contributed to the damaged condition found in the coils in New Jersey.

---

**8.** Defendants' attempt to distinguish the holding in *Armco* is without merit. The *Armco* finding was made, specifically assuming that the consignee was negligent. Defendant Vessel Owner's Reply Brief on Damages, at p. 3.

**9.** Truck receipts (Exhibit 77) show that 9 coils were picked up by the truckers in the rain without tarpaulins. None of these 9 coils were included in the representative coils which were decanned and were the samples used for the salvage sale.

Therefore, defendants are responsible for all of plaintiff's loss, re, the 43 coils.

The customs broker valued the entire shipment at $779,845.49 plus custom duties of $66,831.52 for a total of $846,677.01 as the value at Philadelphia. The cost of trucking to New Jersey was $18,727.99 which, when added to the value at Philadelphia, comes to the sum of $865,405. The Court accepts the testimony of Captain Farquhar that he and Captain Luard agreed that the best way to minimize the loss was to place the coils on the salvage market. Captain Farquhar further testified that he accepted the consignee's bid (the highest of 3 bids received) of $12.00 per hundred weight for a total salvage value of $529,320.[10] Thus the net loss on the total shipment of 280 coils was $336,085; the loss to one coil would be $1,191.76, the loss to 43 coils is $51,245.68.

Plaintiff is therefore awarded the sum of $51,245.68 plus interest from the date of discharge at Philadelphia.

### Summary

This Court finds that plaintiff is entitled to judgment against the M.V. Margarite, *in rem* and Southern Cross Steamship Co., *in personam* in the following amounts:

| | | |
|---|---|---|
| 1. | For loss of 2 Coils— | $ 1,000.00 |
| 2. | For damages to 43 coils— | 51,245.68 |
| | Total | $52,245.68 |

Plus interest from date of discharge at Philadelphia.

Submit Order.

---

**10.** In *Empresa Central Merc. v. Republic of U.S. of Brazil,* 147 F.Supp. 778, 780 (S.D.N.Y. 1977) Judge Palmieri held that a surveyor's estimate is sufficient to establish the extent of cargo damage.