**ROMA WILLIAMS, Plaintiff**
**v.**
**AMERICAN AIRLINES, INC. and WORLDWIDE FLIGHT SERVICES,**
**INC., Defendants/Cross-Claimants**

Civil No. 2002/0057

District Court of the Virgin Islands

Division of St. Croix

August 5, 2005

WARREN B. COLE, ESQ., Hunter Cole & Bennett, Virgin Islands, *for Worldwide Flight Services, Inc., Cross-Claimant.*

CHAD MESSIER, ESQ., Dudley, Topper and Feuerzeig, LLP, Virgin Islands, *for American Airlines, Inc., Cross-Claimant.*

FINCH, *Judge*

## MEMORANDUM OPINION

(August 5, 2005)

THIS MATTER comes before the Court on the Motion for Summary Judgment filed by Defendant Worldwide Flight Services, Inc. [hereinafter "Worldwide"] on its Cross-Claim against Defendant American Airlines, Inc. [hereinafter "American"] for defense and indemnification.

### I. Background

Plaintiff Roma Williams was a passenger on an American flight departing from New Jersey with an ultimate destination of St. Croix, United States Virgin Islands. While at the New Jersey airport, Williams requested wheelchair assistance to board the plane. Williams alleges that Defendants failed to lock the wheelchair after she was on it, and then placed the wheelchair on an incline and left her there. She claims that the wheelchair rolled down the incline, causing her to fall. Williams sustained injuries as a result of this fall.

Worldwide as the successor of AMR Services Corporation, also referred to as AMRS, provides (among other services) courtesy wheelchair service to American passengers. The terms of the Restated Amendment of Airline Services Contracts between AMR Services

Corporation and American Airlines, Inc., dated March 31, 1999, [hereinafter "the Amendment"], govern the relationship between Worldwide and American.

Williams settled her suit against American and Worldwide. What remains to be resolved in this summary judgment motion is whether American must tender Worldwide's defense and indemnify it. The jurisdiction of this Court is based on diversity of citizenship. 28 U.S.C. § 1331.

## II. The Parties' Contentions

Worldwide claims that American is contractually bound to defend and indemnify it pursuant to Article 13(b) of the Amendment which states, in pertinent part:

> (b) American shall not make any claim against [Worldwide] and shall indemnify it (subject as hereinafter provided) against any legal liability for claims and suits, including costs and expenses incidental thereto, in respect of:
>
> > (i) delay, injury or death of persons carried or to be carried by American;
> >
> > ...
>
> arising from an act or omission of [Worldwide] in the performance of the relevant Contract unless done with intent to cause damage, death, delay, injury or loss or recklessly and with knowledge that damage, death, delay, injury or loss would probably result.[1]

American responds that, notwithstanding Article 13(b), the Amendment is ambiguous because in Article 14, Worldwide is required to obtain liability insurance and name American as an additional insured. Article 14 provides, in relevant part:

> 14. Insurance.

---

[1] The remaining subsections of 13(b) are:

(ii) injury or death of employees of American;

(iii) damage to or delay or loss of baggage, cargo or mail carried or to be carried by American; and

(iv) damage to or loss of property owned or operated by, or on behalf of American and any consequential loss or damage;

(a) [Worldwide], at its sole cost and expense, ... shall procure and maintain ... with insurers of recognized financial responsibility, the following insurance:

(i) Aviation liability insurance, including airport liability, comprehensive general liability (including premises, products and completed operations, contractual liability and personal injury coverage) and automobile liability covering all Services performed by [Worldwide] under the Contract, including the ownership, operation or use of all licenced and unlicensed vehicles used at a Station ...

...

(b) [Worldwide shall provide American with certificates of insurance evidence the above coverages ... . Such certificates shall, as respects the aviation and automobile liability coverage:

(i) Name American and its affiliates, successors, assigns and agents and each of the foregoing's respective directors, officers and employees (the "American Indemnified Parties") as additional insureds.

Worldwide replies that the parties agreed that it would obtain liability insurance naming American as an additional insured because under certain circumstances, Worldwide has an obligation under the Amendment to indemnify American. Article 13(e) provides, in its entirety:

(e) [Worldwide] shall not make any claim against American and shall indemnify it (subject as hereinafter provided) against any legal liability for claims or suits, including costs and expenses incidental thereto, in respect of:

(i) injury or death of any employees of [Worldwide], its servants, agents or subcontractors: and

(ii) damage to or loss of property owned or operated by, or on behalf of [Worldwide] and any consequential loss or damage;

arising from an act or omission of American in the performance of the relevant Contract unless done with intent to cause damage, death, delay, injury or loss or recklessly and with knowledge that damage, death, delay, injury or loss would probably result.

341

In further defense of its position that it need not indemnify Worldwide with regard to Williams' claim, American contends that Worldwide's conduct toward Williams was reckless, negating its obligation to indemnify under Article 13(b).

## III. Ambiguity of the Contract

American urges the Court to find the Amendment ambiguous as it relates to American's obligation to defend and indemnify Worldwide. Contract interpretation is ordinarily a matter of state or territorial law, rather than federal law. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 474, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989). At the outset, then, the Court must determine the body of state or territorial substantive law to be applied. The Amendment is not necessarily construed under the law of the Virgin Islands, just because Williams filed this action in the Virgin Islands. However, the choice of law rules of the forum, here the Virgin Islands, govern in a diversity case such as this. *See Klaxon Co. V. Stentor Mfg. Co.*, 313 U.S. 487, 496-97, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941).

The courts of the Virgin Islands apply the choice-of-law rules as set forth in the Restatement (Second) of Conflict of Laws. *B A Properties, Inc. v. Aetna Cas. & Sur. Co.*, 273 F. Supp.2d 673, 680 (D.V.I. 2003); *see* 1 V.I.C. § 4. Under section 187(1) of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." A question of a duty to defend and indemnify is just such an issue. The parties agreed in Article 18 of the Amendment that the Amendment "be governed by, and construed in accordance with, the laws of the State of New York." Thus, the Court will apply New York law in interpreting the Amendment.

▉▉▉ Under the law of New York, the Court, rather than the jury, must decide whether a contractual provision is ambiguous. *See Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000). Contract language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in

the particular trade or business." *Seiden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) (quotation omitted). Contract language is unambiguous "when it has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference in opinion." *Id.* (quotation omitted). Ambiguity does not [exist] "simply because the parties urge different interpretations" or "where one party's view strains the contract language beyond its reasonable and ordinary meaning." *Id.* (quotation omitted). When the language of a contract is unambiguous, summary judgment is generally proper. *Compagnie Financiere de CIC et de L'Union Europeene*, 232 F.3d at 157.

██ To determine whether the Amendment is ambiguous with regard to American's obligation to defend and indemnify Worldwide, the Court must delve into the general understanding of the terminology of the relevant terms of the Amendment. First the Court examines Article 13(b). Article 13(b) requires American to indemnify Worldwide in particular circumstances, but does not indicate that American has any duty to defend Worldwide. Worldwide points to no other contract language that states or implies that American has any duty to defend Worldwide. Therefore, although there is no genuine issue of material fact concerning American's duty to defend Worldwide, Worldwide is not entitled to judgment as a matter of law, because American has no contractual duty to defend Worldwide. Since American did not file a cross-motion for summary judgment, rather than *sua sponte* enter summary judgment on the question of American's duty to defend Worldwide, the Court will do no more than conclude that it cannot grant summary judgment in Worldwide's favor concerning American's duty to defend Worldwide.

██ As to American's obligation to indemnify Worldwide under Article 13(b), the Court finds that Article 13(b), in and of itself, contains no ambiguity. Taking Article 13(b), alone, without considering the insurance requirements of Article 14, American would have an obligation to indemnify Worldwide in this action premised on an injury to someone to be carried by American arising from an act or omission of Worldwide, unless Worldwide's conduct was intentional or reckless.

■ This indemnity agreement is properly construed without reference to the agreement to obtain insurance of Article 14, since an indemnity agreement and an agreement to obtain insurance are distinct:

> [A] promise to obtain insurance is not the same as a promise to indemnify. Under an indemnity agreement, the promisor agrees to assume all responsibility and liability for any injuries or damages. Under an agreement to obtain insurance the promisor merely agrees to procure the insurance and pay the premium on it.

*Zettel v. Paschen Contractors, Inc.*, 100 Ill. App. 3d 614, 427 N.E.2d 189, 191-92, 56 Ill. Dec. 109 (1981); *see also Woods v. Dravo Basic Materials Co.*, 887 F.2d 618, 622 (5th Cir. 1989) ("An agreement to provide insurance is not the same as an agreement to indemnify. It is merely an agreement as to who will pay the premiums for insurance."). Moreover, a requirement that an entity be named as an additional insured may provide coverage broader than the obligations under an indemnity provision. *Juretic v. USX Corp.*, 232 Ill. App. 3d 131, 596 N.E.2d 810, 812-13, 173 Ill. Dec. 186 (1992).

Comparing an indemnity agreement with an agreement to procure insurance is like comparing apples and oranges. An agreement to procure insurance cannot create an ambiguity in an indemnity agreement. Notwithstanding this proposition, however, the Court will further examine American's arguments that the agreement to procure insurance conflicts with the indemnity agreement.

American maintains that "the coverage Worldwide procured for American's benefit in accordance with the Contract is invoked to provide coverage to American for the claims herein." While the insurance that Worldwide agreed to procure for American may cover American's liability to Williams, Worldwide did not agree to procure insurance to satisfy any indemnity obligation American might have toward Worldwide.

Worldwide only agreed to name American as an additional insured with respect to the aviation and automobile liability coverage—not the indemnity coverage. Article 14(b)(ii) expressly requires Worldwide to "[p]rovide that the indemnification and other liabilities assumed by [Worldwide] under the Amendment and the applicable Contract are specifically insured under the contractual liability section of such policies." However, Article 14 does not require Worldwide to provide

that the indemnification assumed by American under the Amendment is specifically insured. Applying the maxim, *expressio unius est exclusio alterius,* and reading Article 14 as a whole, Worldwide never agreed [to] obtain insurance that would cover American's indemnity obligations toward Worldwide. Because Worldwide never agreed to obtain insurance that would cover American's indemnity obligation toward Worldwide, but only to obtain insurance to cover American's liability to a third-party such as Williams, there is no conflict between Worldwide agreeing to name American as an additional insured in Article 14(b) and American agreeing to indemnify Worldwide in Article 13(b).

In addition, American argues that "for Worldwide to undertake the cost of obtaining and maintaining insurance for American's benefit only under circumstances in which Worldwide is obligated to defend and indemnify American would be an exercise in futility and a complete waste of resources as there would be ... no identifiable benefit for American if the coverage is available under those limited circumstances." According to American, "[i]t would be counterintuitive for American to negotiate a deal which requires Worldwide to obtain insurance coverage for those claims in which Worldwide is obligated to defend and indemnify it and not those claims for which a defense and indemnification are unavailable and costs and fees attendant to litigation are likely."

American overlooks significant protection it is afforded by being named as an additional insured. Article 13 concludes with the following statement: "(g) It is the specific intent of the parties that the parties be released from, and indemnified for, their own negligence as set forth in the provisions of this Article 13." If Worldwide were not financially able to meet its obligation indemnify American, American would lose its bargained for right to indemnification. By requiring Worldwide to procure insurance naming American as an additional insured, American would be guaranteed not to bear the burden of its own negligence, in the event of Worldwide's inability to meet its contractual obligation to indemnify American.

Furthermore, Worldwide did not agree to obtain coverage in any amount greater than the levels of coverage set forth in Appendix B of the Amendment. If a claim were to exceed the insurance coverage, or if the insurance carrier were to become insolvent, the indemnity provision would come into play. *Woods v. Dravo Basic Materials Co., Inc.,* 887

F.2d 618, 621-22 (5th Cir. 1989). "It is a common practice in the industry for the parties to contract to require insurance coverage for a portion of the risk and to provide for indemnity in excess of the insurance limits." *Id.* at 622.

Thus, contrary to American's argument, it makes perfect sense for American to require Worldwide to acquire insurance to protect American's expectation that it would be released from, and indemnified for, its own negligence under Article 13 of the Amendment. Moreover, the additional insured provision "preserv[es] a potential source of compensation for injured workers." *Bosio v. Branigar Organization, Inc.*, 154 Ill. App. 3d 611, 506 N.E.2d 996, 998, 107 Ill. Dec. 105 (1987).

Furthermore, to adopt American's argument that it owes no indemnity to Worldwide would render Article 13(b) meaningless. "Under New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible. Rather, an interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect." *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (quotations and citation omitted). The preferred interpretation, then, of Article 13(b), applying New York law, is that American must indemnify Worldwide under certain circumstances.

After reviewing the Amendment as a whole, concentrating particularly on Articles 13 and 14, the Court fails to discern any ambiguity. Notwithstanding the requirement of Article 14 that World-wide procure liability insurance and name American as an additional insured, American is obligated under Article 13(b)(i) to indemnify Worldwide for any suits arising from acts or omissions of Worldwide brought by people carried or to be carried by American, as long as Worldwide's conduct is not intentional or reckless.

## IV. Recklessness

Worldwide argues that it was not reckless, and that therefore, American must indemnify it, but presents no evidence of its lack of recklessness. American similarly contends that Worldwide was reckless, but presents no evidence of recklessness. Who will prevail on this issue depends, then, on who has the burden of proof.

Worldwide, as indemnitee, "must prove its case by a fair pre-ponderance of the credible evidence. It has the burden to establish the

contract of indemnification and all material elements of its cause of action." *New Broad Co. v. Bay Chester Marble & Tile Co.*, 147 N.Y.S.2d 831, 835 (N.Y. City Ct. 1956). Under New York law, "[i]t is well established that a party seeking to enforce an indemnity clause which is conditioned upon a showing that such party is free from fault, has the burden of showing their freedom from fault." *Petito v. Beaver Concrete Breaking Co.*, 161 Misc. 2d 363, 613 N.Y.S.2d 523, 526 (N.Y. City Civ. Ct. 1994); *see also Nissho-Iwai Co., Ltd. v. M/T Stolt Lion*, 617 F.2d 907, 915 (2d Cir. 1980) (holding it reasonable to require indemnitee, seeking to escape liability, to come forward with evidence of due diligence to sustain burden of proving lack of negligence).

Applying these principles to an indemnity agreement that is conditioned on the indemnitee being free from conduct that recklessly caused injury, the Court finds, that applying New York law, the indemnitee has the burden of proving that it did not act recklessly. Thus, Worldwide has the burden of showing that it did not act recklessly in its conduct with regard to providing wheelchair services to Williams.

Ordinarily, on summary judgment, the nonmoving party bears the burden of establishing the existence of a material fact. *American Employers Inc. Co. v. Metro Regional Transit Auth.*, 802 F .Supp. 169, 175 (N.D. Ohio 1992). "However, this rule only applies with respect to issues upon which the nonmoving party bears the burden of proof at trial." *Id.* When the moving party bears the burden of proof on an issue raised in the summary judgment motion, that party carries a heavier burden. The moving party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Id.* at 175-76 (quoting *Calderone v. United States*, 799 F.2d 254, 258-59 (6th Cir. 1986)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (J. Brennan, dissenting) ("If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial.").

Worldwide has produced no evidence of its lack of recklessness. Therefore, the Court cannot determine whether a reasonable trier of fact could find that it acted "recklessly and with the knowledge that damage, death, delay, injury or loss would probably result," relieving American from its indemnity obligation under Article 13(b).

## V. Conclusion

For the foregoing reasons, the Court holds that Article 13(b) requires American to indemnify, but not to defend, Worldwide, under the circumstances stated in Article 13(b). Worldwide is not entitled to summary judgment on its cross-claim for indemnification, however, because it has not shown that there is no genuine issue of material fact as to whether its alleged conduct was reckless.